87 P.3d 1211 (2004)
STATE of Washington, Appellant,
v.
Julio CASTILLA, Respondent.
No. 51679-5-I.
Court of Appeals of Washington, Division 1.
April 19, 2004.
Gregory Link, Wash.App. Project, Seattle, WA, for Appellant.
*1212 Mary Barbosa, King Co. Pros. Atty/Appellate Unit, Seattle, WA, for Respondent.

PUBLISHED IN PART
ELLINGTON, J.
Julio Castilla was a certified nursing assistant. He was convicted of rape for engaging in sexual intercourse with a patient during a treatment session (rape in the second degree). We hold that whether the intercourse occurred during a treatment session was a question for the jury. We reject Castilla's other arguments, and affirm both his conviction and the exceptional sentence based upon the particular vulnerability of his victim.

BACKGROUND
Cheryl Nelson suffers from significant developmental delays and schizophrenia, and functions essentially as a child. Since 1998, she has resided at Chartley House, a facility operated by Seattle Mental Health. In 2002, Nelson had surgery to repair a broken ankle, and was sent to North Auburn Rehabilitation and Health Center (NARC) to recover. She arrived May 31. Julio Castilla was employed at NARC as a certified nursing assistant (CNA). He cared for Nelson for part of his shifts on June 1 and 2.
On June 3, Nelson reported to a nurse that she had been sexually assaulted. Suspicion fell upon Castilla, because of the description given by Nelson and the fact he was on duty at the time of the assault. Investigation revealed that the male component of the vaginal swab taken from Nelson matched Castilla's DNA profile.
Castilla was charged with second-degree rape under the health care provider alternative in RCW 9A.44.050(1)(d), which provides, in relevant part:
A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person ... [w]hen the perpetrator is a health care provider, the victim is a client or patient, and the sexual intercourse occurs during a treatment session, consultation, interview, or examination.
At trial, Castilla conceded that he was a health care provider,[1] that Nelson was a patient, and that they had sexual intercourse. Castilla's defense was that the intercourse did not occur during a "treatment session," the final element of the crime.
The jury found Castilla guilty. The court imposed an exceptional sentence, finding that Castilla knew or should have known that Nelson was a particularly vulnerable victim, that Nelson suffered substantially greater mental and physical injuries than typically seen in second-degree rape cases, and that the rape violated Nelson's zone of privacy.

DISCUSSION
Treatment Session
The principal issue here is Castilla's contention that the evidence did not establish that sexual intercourse occurred during a "treatment session." A challenge to sufficiency of the evidence requires us to decide whether any rational juror could have found guilt beyond a reasonable doubt.[2] In this inquiry, "all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant."[3]
The statute defines "treatment" as "the active delivery of professional services by a health care provider which the health care provider holds himself or herself out to be qualified to provide."[4] The jury was so instructed. The statute does not define the phrase "treatment session," but the common and ordinary meaning of "session" is "a period *1213 ... devoted to a particular activity."[5] The question, therefore, is whether the jury could conclude that intercourse occurred during a time when Castilla was delivering services a CNA is qualified to provide.
The State presented evidence establishing that CNAs at NARC are responsible for "the hands-on care, activities of daily living, dressing, bathing, grooming, [and] assistance with feeding."[6] CNAs are expected to respond to patients who ask for help or who signal a request for assistance with a call button.
Castilla admits he entered Nelson's room in response to her call of "I need help, I need help."[7] But because Nelson was not assigned to his care for that shift, he argues he was not providing treatment to her under the statute. CNAs at NARC worked in teams, however, and are responsible for assisting patients assigned to their partner's care, as well as those on their own assigned list. Nelson was assigned to Castilla's partner's care at the time of the incident. She had been assigned to Castilla's care the day before. Whether she was on Castilla's list that day was thus immaterial.
Castilla testified that Nelson had been flirting with him since her arrival and that when she called him into her room, she insisted upon having sex with him and threatened to scream if he refused. He contends this was not a treatment session. The jury, of course, was not required to believe Castilla. But in any case, he testified he entered her room while on duty and in response to her call for help. She told the nurse that after intercourse, he cleaned her and diapered her. A rational trier of fact could find that Castilla was engaging in a treatment session when he responded to Nelson's call, and could reasonably conclude that the intercourse occurred during a treatment session.
Castilla argues that this approach to the statute is insufficient, because the State failed "to prove the sexual intercourse occurred during a period devoted to the active delivery of professional health care services."[8] Essentially, Castilla argues that the sexual interlude was a personal detour from his professional duties, and therefore did not occur during a period devoted to the active delivery of professional health care services. This means, apparently, that if professional services are interrupted by a sexual encounter, the intercourse itself does not occur during a treatment session. But under this theory, the only health care providers who could be prosecuted under the statute would be those who claim to engage in intercourse for professional reasons. We are confident that was not the legislative intent, if only because if that were the objective, the legislature had no need to include certified nursing assistants such as Castilla under the definition of health care provider; no nursing assistant could claim such a therapeutic objective.
We reject Castilla's reading of the statute. The court properly left to the jury the determination of whether the intercourse occurred during a treatment session. The evidence amply supports its finding that it did.
Exceptional Sentence
We analyze the appropriateness of an exceptional sentence by determining whether the reasons given by the sentencing court are clearly erroneous, whether the reasons justify a departure from the standard range as a matter of law, and whether the sentencing court abused its discretion by imposing a sentence that is clearly excessive.[9] The court found that Nelson was particularly vulnerable because of her mental and physical disabilities, and that her vulnerability warranted an exceptional sentence.
*1214 Victim vulnerability is a valid aggravating factor when the defendant knows or should know that extreme youth, advanced age, disability or ill health makes the victim particularly vulnerable or incapable of resistance.[10] Castilla contends such grounds are improper here, however, because victim vulnerability is inherent in the crime of rape of a patient or client by a health care provider.[11]
We disagree. The statute narrows the class of victims to those who are "client[s] or patient[s]."[12] But this narrower class includes many who do not fall into any of the categories of extreme youth, advanced age, disability or ill health. Even a hospital patient is not necessarily particularly vulnerable or incapable of resistance. Victim vulnerability is not inherent in the offense of second-degree rape by a health care provider.
Castilla also contends the evidence does not support the court's finding of vulnerability. The court found that Nelson's substantial mental disability was apparent to everyone who had contact with her, and that at the time of the rape, Nelson had a heavy cast on her leg, was in pain, and as a result was less mobile and less able to fight off Castilla^ The court also found that Castilla, who had been a CNA for over 10 years, could readily identify persons with mental disabilities, and had access to information in Nelson's medical records. All these findings are supported by the testimony of numerous witnesses. The court did not err in finding that Nelson was a particularly vulnerable victim, and did not abuse its discretion in imposing an exceptional sentence on that basis.[13]
Castilla's conviction and exceptional sentence are affirmed.
The remainder of this opinion lacks precedential value and will not be published in the Washington Appellate Reports but will be filed of public record in accord with RCW 2.06.040.
KENNEDY and SCHINDLER, JJ., concur.
NOTES
[1] RCW 9A.44.010(14) provides, in part: "`Health care provider' for purposes of RCW 9A.44.050 and 9A.44.100 means a person who is, holds himself or herself out to be, or provides services as if he or she were. [a] member of a health care profession under chapter 18.130 RCW." A certified nursing assistant is a health care provider. RCW 18.130.040(2)(a)(xiii).
[2] State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992).
[3] Id. (citing State v. Partin, 88 Wash.2d 899, 906-07, 567 P.2d 1136 (1977)).
[4] RCW 9A.44.010(15).
[5] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2077 (1993); see also State v. Argueta, 107 Wash. App. 532, 536, 27 P.3d 242 (2001) (a court may rely on dictionary definitions to give words their ordinary understanding).
[6] Report of Proceedings (RP) (Nov. 19, 2002) at 17.
[7] RP (Nov. 20, 2002) at 117.
[8] Brief of Appellant at 8-9.
[9] State v. Dunaway, 109 Wash.2d 207, 218, 743 P.2d 1237 (1987); RCW 9.94A.585.
[10] State v. Gore, 143 Wash.2d 288, 317, 21 P.3d 262 (2001); RCW 9.94A.535(2)(b).
[11] See State v. Tili, 148 Wash.2d 350, 369, 60 P.3d 1192 (2003) (factors inherent in the crime at issue may not serve as justification for an exceptional sentence).
[12] RCW 9A.44.050(1)(d).
[13] The court stated that each ground for the exceptional sentence was independently sufficient. We therefore need not reach Castilla's challenges to the other grounds.