STATE of Minnesota, Respondent,

v.

Anthony Phillip SCACCHETTI,
Appellant.

No. A03–301.

Court of Appeals of Minnesota.

Jan. 4, 2005.

Mike Hatch, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN, and Donald F. Ryan, Crow Wing County Attorney, Brainerd, MN, for respondent.

John M. Stuart, State Public Defender, Sara L. Martin, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by SCHUMACHER, Presiding Judge; KLAPHAKE, Judge; and STONEBURNER, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

Appellant Anthony Phillip Scacchetti challenges his convictions for first-degree criminal sexual conduct, malicious punishment of a child, and third-degree assault, arguing under the Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), his constitutional right of confrontation was violated by the admission of a child accuser's out-of-court statements to a nurse practitioner. We affirm.

## FACTS

In May 2002, Scacchetti began babysitting for his girlfriend's three-year-old daughter, R.J., while his girlfriend, K.J., was working. In late June, K.J. returned home from work and found R.J. with numerous bruises and a swollen face. K.J. also found items with blood on them including R.J.'s underwear, R.J.'s pillowcase, and a washcloth. Scacchetti told K.J. that R.J. had fallen in the bathtub.

K.J. took R.J. to Children's Hospital in Minneapolis. An emergency room physician examined R.J. and found a possible hymen abnormality. Suspecting sexual abuse, the physician called a specialist for further examination.

The Midwest Children's Resource Center is a department of Children's Hospital that specializes in diagnosing whether a child has been the victim of abuse. Dr. Carolyn Levitt, a pediatrician and director of the center, testified at trial that the center's process for diagnosing children includes a discussion with the parent or other person who brought the child to the clinic, a physical examination of the child, and an interview in which the child is asked "historical" questions about potential abuse. According to Levitt, this process is based on a "medical protocol" and it is "pretty much based on what [Levitt] would be doing if [she] were evaluating a child ... who had abdominal pain and appendicitis." Examinations are videotaped for Levitt's review because she is often not in the department when children are examined.

Laurel Edinburgh, a nurse practitioner with the center, examined R.J. after the emergency room physician suspected abuse had occurred. Edinburgh explained that she evaluates children to determine whether their "symptoms or signs" are due to a medical cause, neglect, abuse, or accident. She testified that she usually does not provide ongoing care for children who have been physically or sexually abused, but does provide ongoing care in situations of neglect. She also testified that she refers families to appropriate services in their local community.

Edinburgh started her examination of R.J. by talking with R.J.'s mother. She then conducted a physical examination of R.J. Photographs taken during this examination show numerous bruises on R.J.'s body, including an oblong bruise next to her anal opening. While examining R.J.'s anal and vaginal area, Edinburgh asked R.J. if anything had happened there. Edinburgh testified that R.J. said, "Yes." Edinburgh then asked, "What touched [you] there?" According to Edinburgh, R.J. said, "Tony's pee-pee."

During the second examination, Edinburgh asked R.J. whether she had been touched, by whom, and in what way. A videotape of Edinburgh's conversation with R.J. was played for the jury. During this examination, R.J. indicated that Scacchetti had touched her where she "poop[s]." R.J. said, while showing one finger pointing up, "He put his hands right in there." R.J. also said that Scacchetti had touched her with his "pee-pee."

Edinburgh testified, based on her examination of R.J., that she believed R.J. had been physically and sexually abused. With regard to whether R.J.'s disclosures played a part in the diagnosis of abuse, Edinburgh said:

Yes, it does.... I use all of my knowledge of how children disclose, out of the statements that they made during the interview, out of what a parent tells me about a medical history, about any histories of trauma, and my physical exam, and I put those, all of those sort of factors go together when I'm making a

diagnosis that a child was sexually abused.

R.J. did not testify at trial and Scacchetti did not have an opportunity prior to trial to cross examine her.

A jury found Scacchetti guilty of first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(a) (2000), malicious punishment of a child in violation of Minn.Stat. § 609.377, subd. 4 (2000), and third-degree assault in violation of Minn. Stat. § 609.223, subd. 3 (2000). This court previously affirmed Scacchetti's convictions in an unpublished opinion. *State v. Scacchetti*, No. A03–301, 2004 WL 1191666 (Minn.App. June 1, 2004). On remand from the Minnesota Supreme Court, we reconsider Scacchetti's appeal only with regard to the United States Supreme Court's recent decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

### ISSUE

█ Did the admission into evidence of R.J.'s out-of-court statements to Edinburgh violate Scacchetti's Confrontation Clause rights?

### ANALYSIS

█ A district court's evidentiary rulings lie within its sound judgment and will not be reversed on appeal absent an abuse of discretion. *State v. Amos*, 658 N.W.2d 201, 203 (Minn.2003). "[I]f a case is pending on direct review when a new rule of federal constitutional criminal procedure is announced, a criminal defendant is entitled to benefit from that new rule." *O'Meara v. State*, 679 N.W.2d 334, 336 (Minn.2004); *accord Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987) (stating, "a new rule for the conduct of criminal prosecutions is to be applied retroactively to *all* cases, state or federal, pending on direct review or not yet final"

(emphasis added)). Scacchetti's case was pending on direct review when the Supreme Court released its opinion in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Thus, Scacchetti is entitled to benefit from any applicable rule announced in *Crawford.*

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The Minnesota Constitution affords the same fundamental right, and the analysis is the same under both provisions. *See* Minn. Const. art. I, § 6; *State v. Dukes*, 544 N.W.2d 13, 19 (Minn.1996).

In *Crawford*, the Supreme Court criticized the reasoning of its previous decision in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which allowed out-of-court statements of an unavailable witness to be admitted at trial upon a showing of adequate indicia of reliability. *Crawford*, 124 S.Ct. at 1369–71. The Court stated that the Sixth Amendment right to confront one's accuser cannot be satisfied by the reliability analysis in *Roberts* where "testimonial" statements are at issue. *Id.* at 1374. As such, the Court held, the Sixth Amendment bars out-of-court, "testimonial" statements from admission into evidence unless (1) the hearsay declarant is unavailable, and (2) the defendant had a prior opportunity to cross-examine the declarant. *Id.*

The Court declined to provide a comprehensive definition of "testimonial." *Id.* at 1374. Nevertheless, the Court provided examples of testimonial statements, including prior testimony at a preliminary hearing, previous trial, or grand jury proceedings, and police interrogations. *Id.* at 1364, 1374. The Court held, in reversing the trial court, that a "recorded statement, knowingly given in response to structured

police questioning" in an interrogation setting was testimonial. *Id.* at 1365 n. 4. In reaching its decision, the Court recognized the "unique potential for prosecutorial abuse" when government officers, acting with an eye toward trial, are involved in the production of testimony. *Id.* at 1368 n. 7.

The Court also noted "[v]arious formulations of this core class of 'testimonial' statements," including: (1) ex parte, in-court testimony or its functional equivalent, including affidavits, custodial examinations, prior testimony, or similar pretrial statements; (2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and (3) statements made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford,* 124 S.Ct. at 1364.

On remand, Scacchetti argues R.J.'s disclosures to Edinburgh fall within the third and broadest, proposed formulation of testimonial statements because Edinburgh "does not provide ongoing care for children," "clearly [knew] that her examinations may be used as evidence in the criminal case," and "always tapes interviews." But in order for Scacchetti to succeed on this argument, he must show, under *Crawford,* that the circumstances surrounding the contested statements led the three-year-old to reasonably believe her disclosures would be available for use at a later trial, or that the circumstances would lead a reasonable child of her age to have that expectation. *See Crawford,* 124 S.Ct. at 1364. Scacchetti's arguments fail to show this.

Scacchetti also contends the circumstances surrounding R.J.'s disclosures are analogous to the child declarant's statements in *State v. Courtney,* 682 N.W.2d 185 (Minn.App.2004), and are therefore testimonial. In *Courtney,* this court determined that under the holding of *Crawford* a child's statement to a child protection worker was testimonial where an investigating police officer arranged the interview, observed the interview via T.V. satellite, and at one point interrupted the interview and directed the questioning. *Id.* at 196–97.

The record shows Edinburgh sought information from R.J. in order to provide a medical diagnosis—the examination protocol was developed by medical professionals and is similar to what a pediatrician would do when evaluating a child for medical needs generally; the examinations were videotaped to allow a pediatrician to consult with the nurse practitioner in the diagnosis process; Edinburgh considered R.J.'s disclosure, along with numerous other factors, in diagnosing abuse; and after diagnosing a child, Edinburgh provides ongoing care or refers the child to other, appropriate resources. *See United States v. Renville,* 779 F.2d 430, 438 (8th Cir. 1985) (noting statements of identity to physician by child sexually abused by family member are of type physicians reasonably rely on in reaching diagnosis and course of treatment). Edinburgh was not working on behalf of, or in conjunction with, investigating police officers or other government officials "for the purpose of developing the case against [the defendant]." *Courtney,* 682 N.W.2d at 196. R.J.'s disclosures are not testimonial under this theory.

We conclude that R.J.'s out-of-court statements to Edinburgh were not testimonial and therefore their admission did not violate Scacchetti's right to confrontation. *Accord State v. Vaught,* 268 Neb. 316, 682 N.W.2d 284–86, 291 (2004) (statement of four-year-old victim that "defendant put his finger in her pee-pee" was not

testimonial because victim's statement was made for the purpose of medical diagnosis); *State v. Castilla,* 121 Wash.App. 198, 87 P.3d 1211, 1214 (2004) (concluding statements made by sexual assault victim to sexual assault nurse regarding rape were not testimonial).

## DECISION

R.J.'s out-of-court statements to a nurse practitioner, made in a hospital while the nurse examined R.J. for purposes of medical diagnosis, were not testimonial and therefore their admission did not violate Scacchetti's right to confrontation even though R.J. did not testify at trial and Scacchetti did not have a prior opportunity to cross examine her.

**Affirmed.**