JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, D.L., appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Court Division, finding him to be delinquent on the charge of rape upon a minor child under the age of thirteen, in violation of R.C. 2907.02(A)(1)(b). For the reasons stated below, we affirm.
 {¶ 2} On August 7, 2003, a complaint was filed charging D.L., a minor who was about the age of thirteen years, as being a delinquent child as defined in R.C. 2152.02(f). The complaint alleged D.L. had engaged in sexual conduct (rape) with a three-year-old child (referred to herein as "the victim"), in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree.
 {¶ 3} D.L. filed a motion for competency hearing to determine the competency of the three-year-old victim to testify at trial. The court found the victim was not competent to testify. The court also found that statements made by the victim could not be introduced under the hearsay exception of Evid.R. 807 for child statements in abuse cases. Specifically, the court found there was no independent proof of the sexual act or act of physical violence as required by the rule.
 {¶ 4} At trial, testimony was presented that the victim's parents had a volatile relationship. Visitation with the victim's father would occur at the paternal grandparents' home. During weekend visitations, the victim would sleep on a blow-up mattress at her grandparents' home. Other family members would often stay overnight at the home, including D.L., who is the victim's cousin. The victim's mother testified that in May 2003, she witnessed the victim, who was a three-year-old, get on top of her twelve-yearold sister and start "pumping" her. After questioning the victim about where she learned that, the victim's mother scheduled an appointment with the family pediatrician and telephoned 696-KIDS.
 {¶ 5} While awaiting test results from the pediatrician, the victim was taken to meet with a social worker, Patricia Altiere ("Altiere"), from the Cuyahoga County Department of Family and Children Services. During her interview of the victim, Altiere gave the victim anatomical pictures of a boy and a girl. When asked where she had been touched, the victim circled the vaginal area on the picture of the girl. When asked what she had been touched with, the girl circled the penis on the picture of the boy. The victim referred to the penis as a "black stick" and indicated the black stick came from the pants. The victim also indicated that the incident occurred at her grandparents' house.
 {¶ 6} Altiere testified that the victim was able to give her a great deal of detail and that the victim's demeanor was very "matter of fact." As a result of her questioning of the victim, Altiere believed that there was a possibility that something could have happened to the victim.
 {¶ 7} Altiere made a referral to Rainbow Babies and Children's Care Clinic ("Rainbow") and notified the police. Altiere also spoke to the victim's mother and learned that the victim had made disclosures to her mother that were consistent with the disclosures made to Altiere.
 {¶ 8} The victim's appointment at Rainbow was approximately two weeks later. Lauren McAliley ("McAliley"), a pediatric nurse practitioner with the child protection program at Rainbow, conducted a medical interview and performed a general medical screening and a colposcopic examination of the victim's anal and genital area. McAliley memorialized her observations and assessments in a medical report. Over objection, the court admitted statements made by the victim together with the medical record under the hearsay exception for statements made for purposes of medical diagnosis or treatment, Evid.R. 803(4).
 {¶ 9} While taking the victim's medical history, McAliley took statements from the victim to evaluate how likely it was she had been abused and to determine what laboratory tests and medical treatment might be needed. The victim told McAliley that an individual had stuck her with a black stick in her genital area and anal area. The victim identified the person, referring to D.L. by his first name. McAliley also quoted the victim as saying, "he stick — stick me on a stick."
 {¶ 10} With respect to the physical exams, the victim presented as a healthy three-and-one-half-year-old and her exams were normal. McAliley testified that normal exams do not rule out sexual abuse as "more often than not," children who have been sexually abused have normal or nonspecific exam results. This is because a lot of child sexual abuse is not assaultive and would not cause injuries, and any irritations may be gone by the time of an examination.
 {¶ 11} In conducting her assessment, McAliley took into account that the victim's disclosure was detailed, that the victim had consistently disclosed the same elements to the persons she had spoken to over time, and that other contributing factors that might discredit sexual abuse were absent. After conducting her assessment of the victim, McAliley determined that sexual abuse of the victim was probable.
 {¶ 12} When questioned by the police, D.L. denied touching the victim. He also denied the allegations when testifying at trial.
 {¶ 13} The trial court found D.L. was delinquent on the charge of rape, a first degree felony. D.L. has appealed, raising four assignments of error for our review.
 {¶ 14} D.L.'s first assignment of error provides:
 {¶ 15} "The trial court erred in permitting the alleged victim's out of court statements to Lauren McAliley and the out of court statements contained in the medical report to be presented as evidence at trial."
 {¶ 16} D.L. argues the victim's statements were testimonial in nature and should not have been admitted without the ability to confront the witness against him pursuant to Crawford v. Washington (2004), 541 U.S. 36. In Crawford, the United States Supreme Court held that where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is confrontation. Id. at 68-69. Crawford
has been held to have retroactive effect because "[n]ew rules of criminal procedure which expand the rights of the accused always have retroactive application to criminal cases pending direct review." State v. Hill,
Cuyahoga App. No. 84846 84887, 2005-Ohio-1501, citing State v.Cutlip, Medina App. No. 03CA0118-M, 2004-Ohio-2120.
 {¶ 17} As an initial matter, we must determine whether the statements in question are testimonial. Under the facts of this case, the issue is whether the statements were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. See Crawford, 541 U.S. at 51-52. In the absence of circumstances suggesting otherwise, courts have had a tendency to find statements made by a sexual abuse victim to a nurse to be nontestimonial. State v. Stahl, Summit App. No. 22261, 2005-Ohio-1137 (finding victim's statements made to a nurse regarding rape, after already reporting to the police, were for the purpose of medical treatment and were nontestimonial); State v. Lee, Summit App. No. 22262, 2005-Ohio-996 (finding there is no reason for a rape victim to believe that when she reiterates statements to a sexual assault nurse, they will be used for anything other than treatment); State v. Scacchetti
(Minn.App. 2005), 690 N.W.2d 393 (three-year-old victim's statements to a nurse practitioner, made in a hospital while the nurse examined the victim for purposes of medical diagnosis, were not testimonial); Statev. Vaught (Neb.App. 2004), 268 Neb. 316, 682 N.W.2d 284 (finding a four-year-old victim under the facts of the case would not reasonably anticipate that statements solicited from a doctor, purportedly for medical treatment, would ultimately be available for use at a later trial); State v. Castilla (Wash.App. 2004), 121 Wa. App. 198, 87 P.3d 1211,1214 (concluding statements made by sexual assault victim to sexual assault nurse regarding rape were not testimonial).
 {¶ 18} The evidence in this case reflects that after the social worker, Altiere, interviewed the victim, she believed there was a possibility that something could have happened to the victim. As a result, Altiere notified the police and referred the victim to Rainbow. The police were informed of the allegations before the victim was seen at Rainbow. It would appear from these circumstances that the police were informed so they could conduct an investigation, and the purpose of being referred to Rainbow was for medical evaluation and treatment.
 {¶ 19} Nevertheless, D.L. argues the victim had already been seen by her pediatrician and alleges the victim was sent to Rainbow for investigation of a possible criminal case. D.L. further asserts that McAliley is with the child protection program and could reasonably believe that statements of the victim would be available for use at trial. D.L. refers to McAliley as a "government intermediary," claiming her referrals come from government sources. We do not agree with D.L.'s argument. There is no evidence in the record that McAliley, the nurse practitioner, was working on behalf of, or in conjunction with, investigating police officers for the purpose of developing the case against D.L. McAliley took statements from the victim to evaluate how likely it was that she had been abused and to determine what laboratory tests and medical treatment might be needed. McAliley considered information from the victim's medical history to aid her in making her assessment. She also conducted a physical evaluation of the victim. There was no evidence that the victim was interviewed for the express purpose of developing her testimony for use at trial.
 {¶ 20} Insofar as D.L. claims McAliley would have been aware that the statements of the victim would be available for use at trial, this argument is flawed. "[I]n order for [the appellant] to succeed on this argument, he must show, under Crawford, that the circumstances surrounding the contested statements led the three-year-old to reasonably believe her disclosures would be available for use at a later trial, or that the circumstances would lead a reasonable child of her age to have that expectation." Scacchetti, 690 N.W.2d 393, 396. Our review of the record shows no circumstances to indicate the victim, or a reasonable child of her age, would have believed her statements were for anything other than for medical treatment.
 {¶ 21} D.L. also argues the true purpose of attempting to obtain the identity of the perpetrator was for prosecution purposes. However, courts have consistently found that a description of the encounter and identification of the perpetrator are within scope of statements for medical treatment and diagnosis. Stahl, supra; State v. Scott (Jun. 7, 1995), Cuyahoga App. No. 6-94-17; State v. Shephard (Jul. 1, 1993), Cuyahoga App. No. 62894. Moreover, the Supreme Court of Ohio has held "statements made by a child during a medical examination identifying the perpetrator of sexual abuse, if made for purpose of diagnosis and treatment, are admissible pursuant to Evid.R. 803(4), when such statements are made for the purposes enumerated in that rule." State v.Dever, 64 Ohio St.3d 401, 413 n8, 1992-Ohio-41.[1]
 {¶ 22} D.L.'s first assignment of error is overruled. D.L.'s second assignment of error provides:
 {¶ 23} "The trial court erred in permitting the alleged victim's out of court statements to Lauren McAliley and the out of court statements contained in the medical report to be presented as evidence at trial after determining that the alleged victim was incompetent to testify."
 {¶ 24} D.L. argues the victim's statements should not have been admitted under the medical diagnosis exception to the hearsay rule because the victim was found incompetent to testify, and the statements were already found inadmissible by the court under Evid.R. 807(a)(3). D.L. relies on State v. Wallick, 153 Ohio App.3d 748, 2003-Ohio-4534, wherein the court found statements of a child could not be admitted because the child had been found incapable of receiving just impressions of facts and transactions when found incompetent to testify at trial. We do not agree that a finding of incompetency to testify should automatically require a finding that statements of a child for medical treatment are untrustworthy.
 {¶ 25} The Supreme Court of Ohio has recognized the growing problem of child abuse and the difficulty in resolving cases involving young victims. State v. Boston (Oct. 25, 1989), 46 Ohio St.3d 108, 115.[2]
The court has stated that in determining the admissibility of a child's statement under Evid.R. 803(4), "[t]he trial court should consider the circumstances surrounding the making of the hearsay statement. * * * The credibility of the statements would then be for the jury to evaluate in its role as factfinder. In addition, the witness whose testimony brings in the child's hearsay statement can be cross-examined about the circumstances surrounding the making of the statement." Dever,64 Ohio St.3d at 410. The court went on to hold in Dever that "a trial court does not abuse its discretion when it admits a child declarant's statements made for the purpose of medical diagnosis or treatment pursuant to Evid.R. 803(4), without first establishing the child declarant's unavailability to testify." Id. at 412.
 {¶ 26} Further, a majority of Ohio courts addressing the competency issue have held statements by a child for purposes of medical diagnosis or treatment are admissible regardless of the competency of the child.State v. Brewer, Erie App. No. E-01-053, 2003-Ohio-3423; State v.Rusnak, Cuyahoga App. No. 80011, 2002-Ohio-2143; State v. Ashford (Feb. 16, 2001), Trumbull App. No. 99-T-0015; State v. Wilson (Feb. 18, 2000), Adams App. No. 99CA672, paragraph one of the syllabus; Scott, supra;Shephard, supra; State v. Ulis (1993), 91 Ohio App.3d 656, 665; Statev. Miller (1988), 43 Ohio App.3d 44; State v. McWhite (Dec. 29, 1995), Lucas App. No. L-95-007.
 {¶ 27} The above-cited cases adhere to the position that "[t]he judicial determination of legal competency of a child * * * for trial purposes is a * * * different consideration than * * * admissibility of hearsay statements of the same child made to a physician during diagnosis and treatment." Ferrell v. Ferrell (Mar. 14, 1986), Huron App. No. H-84-39. "[I]t is not a condition precedent to admissibility of statements made to a physician for diagnosis and treatment under Evid.R. 803(4) that a child be determined competent to testify pursuant to Evid.R. 601(A). They are independent matters for consideration." Id.
 {¶ 28} As this court found in State v. Rogers (Dec. 9, 1993), Cuyahoga App. No. 64979, "because an incompetency ruling is a declaration that the witness is incapable of understanding an oath, or liable to give an incoherent statement as to the subject and cannot properly communicate to the jury, it does not make for a conclusion that all out-of-court statements are per se inadmissible when a witness is declared incompetent." (Internal citations omitted.) This may be particularly true in the case of young children. Simply because a child is deemed incompetent for purposes of testifying does not make the child's statements per se inadmissible. Where the totality of the circumstances fail to demonstrate a lack of reliability or trustworthiness, the statements should be admitted if they fall within the hearsay exception. The credibility of the statements may then be evaluated by the trier of fact. Dever, 64 Ohio St.3d at 410.
 {¶ 29} Therefore, a court may admit a child's statements under Evid.R. 803(4) if they are made for purposes of medical diagnosis or treatment provided there is no evidence to cast doubt upon the child's motivation for making the statements. Wilson, supra. This hearsay exception "* * * is based upon the belief that the declarant's subjective motive generally guarantees the statement's trustworthiness. Since the effectiveness of the treatment depends upon the accuracy of information given to the physician, the declarant is motivated to tell the truth."Brewer, supra, quoting State v. Eastham (1988), 39 Ohio St.3d 307, 312
(H. Brown, J., concurring). With respect to children of tender years, "[o]nce the child is at the doctor's office, the probability of understanding the significance of the visit is heightened and the motivation for diagnosis and treatment will normally be present. * * * In many situations, the statements of young children are sufficiently trustworthy and can appropriately be admitted pursuant to Evid.R. 803(4)." Dever, 64 Ohio St.3d at 410.
 {¶ 30} In this case, the victim's statements were made in a hospital to an individual she knew to be a medical professional entrusted with her care. The nurse testified that she took statements from the victim to evaluate the victim and to determine what medical treatment might be needed. While there was evidence in this case that the victim's parents had a volatile relationship, D.L. has pointed to no evidence that the victim had any animosity toward her father. Further, there is a lack of evidence indicating undue influence on the victim. There has been no showing that the child's motivation in making the statements was for any purpose other than medical diagnosis or treatment. Additionally, the record shows the victim made consistent declarations to her mother, the social worker, and the nurse. Under these circumstances, there is no evidence to cast doubt upon the child's motivation for making the statements. Also, the statements that Altiere described as "matter of fact" were consistent and sufficiently trustworthy.
 {¶ 31} A trial court has broad discretion in determining whether a declaration should be admissible as a hearsay exception. Dever,64 Ohio St.3d at 410. Upon review of the transcript of proceedings in this case, this court finds that the trial court did not err in admitting the victim's statements and medical record into evidence under Evid.R. 803(4).
 {¶ 32} D.L.'s second assignment of error is overruled. D.L.'s third and fourth assignments of error provide:
 {¶ 33} "The evidence was insufficient to establish that appellant had engaged in sexual conduct with another who is not the spouse of the offender."
 {¶ 34} "The verdict of the trial court was against the manifest weight of the evidence."
 {¶ 35} When an appellate court reviews a record upon a sufficiency challenge, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Leonard, 104 Ohio St.3d 54, 67, 2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 36} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Leonard, 104 Ohio St.3d at 68 (internal quotes and citations omitted).
 {¶ 37} D.L. was found to be a delinquent on the charge of rape upon a minor child under the age of thirteen, in violation of R.C.2907.02(A)(1)(b). That statute provides that "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies: (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b).
 {¶ 38} The evidence in this case established that at the time of the incident, D.L. was thirteen and the victim was his three-year-old cousin. The victim's mother witnessed her get on top of the victim's sister and start pumping her. The victim consistently reported that D.L. had sexually assaulted her, specifically stating he "stick me on a stick" in both the genital and anal area. The victim was able to identify on a picture what the stick was and where on her body she had been assaulted. Also, the totality of the circumstances failed to demonstrate a lack of reliability or trustworthiness. Upon our review of the record, viewing the evidence in a light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 39} Further, after reviewing the record, weighing the evidence and considering the credibility of the witnesses, we find that the trial court did not lose its way. We find that there was substantial, competent, credible evidence upon which the fact finder could have found all the elements of the crime had been proved beyond a reasonable doubt. Accordingly, we conclude the judgment was not against the manifest weight of the evidence. D.L.'s third and fourth assignments of error are overruled.
Judgment affirmed.
Rocco, J., Concurs; McMonagle, J., Dissents (see dissenting opinion).
[1] The identity of the perpetrator is relevant to determining the extent of contact, the possibility of continued exposure to the perpetrator, and the possibility of sexually transmitted diseases, as well as to the psychological effects on the child. Dever, 64 Ohio St.3d at 413
n8.
[2] The court has even gone so far as to advocate amending Evid.R. 601 to declare child victims of sexual abuse under the age of ten competent to testify without prior qualification. Boston, 46 Ohio St.3d at 115.