(129 P.3d 646)

No. 92,251

STATE OF KANSAS, *Appellee*, v. ELROY D. HENDERSON, *Appellant*.

Opinion filed March 10, 2006.

*Roger L. Falk* and *Christopher Hughes*, of Law Office of Falk & Owens, P.A., of Wichita, for appellant.

*Charles L. Rutter* and *David Lowden*, assistant district attorneys, *Nola Tedesco Foulston*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before GREEN, P.J., LARSON, S.J., and WAHL, S.J.

LARSON, J.: Elroy D. Henderson appeals his conviction of one count of aggravated indecent liberties with a child, K.S.A. 21-3504(a)(3)(A), contending his right of confrontation was violated and that there was insufficient evidence to support his conviction.

Although we reverse and remand for a new trial under the reasoning of the recent United States Supreme Court case of *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), we must set forth the facts in considerable detail in order to resolve Henderson's second contention that without the

admission of a videotape interview of the alleged victim, F.J.I., there is insufficient evidence to support his conviction.

*Factual and procedural background*

Henderson was charged in October 2003 of lewdly fondling or touching F.J.I., a 3-year-old child on or about February 24, 2003. Following a preliminary hearing, he was bound over for trial on the charge of aggravated indecent liberties in violation of K.S.A. 21-3504(a)(3)(A).

Shortly before trial, the State moved to admit two statements made by F.J.I. pursuant to K.S.A. 60-460(dd). In one statement made in March 2003, while in the presence of her mother and a nurse, F.J.I. nodded her head affirmatively when asked whether "Tae" (the name F.J.I. called Henderson, her mother's former boyfriend) had hurt her. The State also sought to admit a videotape of an interview of F.J.I. conducted by Detective Jon Cherney of the Sedgwick County Sheriff's Department and Lori Chandler of the Kansas Department of Social and Rehabilitation Services (SRS).

At the hearing on the State's K.S.A. 60-460(dd) motion, F.J.I. was brought to the court outside the presence of the jury. After F.J.I. was asked a number of questions, the court found she was unavailable as a witness because she was unable to understand the proceedings, understand the questions, or understand her duty to testify truthfully. The State proffered evidence as to proposed testimony of the mother, the nurse, and a physician to establish the reliability of F.J.I.'s statements. Henderson's counsel asserted there was insufficient indicia of reliability under the circumstances. Henderson further objected to the admission of the statements, contending it violated his right to confrontation. The court then found that F.J.I.'s affirmative response to her mother's questions at the hospital did not possess a particularized guarantee of trustworthiness and would not be admitted. However, the court found the videotape did possess the required trustworthiness and would be admissible. In making its decisions, the court relied several times upon *State v. Myatt*, 237 Kan. 17, 26, 697 P.2d 836 (1985), and *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980).

The testimony at trial showed F.J.I. was taken by her mother to the Wichita Clinic on March 3, 2003, complaining of pain during urination, and the mother noticed a thick discharge from F.J.I.'s vagina. The nurse, Frances Harris, took swab samples from F.J.I. for testing at the clinic's lab. The tests showed a urinary tract infection and were positive for gonorrhea. The tests were redone to ensure accuracy and again showed the same results. Harris advised the mother of the results and reported the test results to the authorities. Harris testified she had examined F.J.I. in the past during regular checkups and found no sign of a sexually transmitted disease (STD).

F.J.I.'s mother testified and confirmed Harris' report of gonorrhea. Mother said F.J.I. had complained that her stomach and "potty place" were hurting for about a week, and 3 days before she took F.J.I. to the clinic, she noticed a discharge from F.J.I.'s vagina. Mother stated the only person who had unsupervised access to F.J.I. was her ex-boyfriend, Henderson, who she identified as "Donte." Mother testified she had told this fact to Harris.

Mother further testified she had dated Henderson. They had broken up; but they started seeing each other again in February 2003. Mother said Henderson came to her house in the early morning hours of February 24, 2003, and they had unprotected consensual sex. She said later that morning Henderson offered to watch F.J.I. while she was at work because her regular babysitter was not available. Mother said Henderson and F.J.I. were alone that day for 6 hours. She testified no other man or men had unsupervised contact with F.J.I. in the 4 weeks preceding March 4, 2003. Mother also said that after learning of F.J.I.'s test she had a STD test which showed she was positive for gonorrhea. In her testimony, mother denied instructing F.J.I. to identify Henderson prior to her interview with authorities.

The testimony concerning F.J.I.'s interview, which is the central issue to this appeal, showed that F.J.I. after her diagnosis was interviewed on March 7 by Detective Cherney and Lori Chandler. Cherney and Chandler both belonged to the Exploited and Missing Child Unit (EMCW). They first talked to mother and then talked to F.J.I. in her mother's presence; this interview was videotaped.

The audio portion of the interview was transcribed as well. Henderson renewed his objections to the admission of the videotape and its transcription on confrontation grounds.

The videotape was played to the jury over Henderson's objections. During the interview, F.J.I. identified different body parts based upon a drawing of a girl figure. She referred to her backside as her "body" and her front genital area as her "potty." When Chandler was telling F.J.I. about the parts of a girl that nobody should touch, F.J.I. said, "Tae touched my body and it was hurting." She stated that Tae touched her with "the ding ding." F.J.I. showed Chandler on the drawing where Tae's "ding ding" touched her. She said the touching happened at her grandmother's house. Chandler then pulled out a drawing of a young adult male and asked F.J.I. to show her what a "ding ding" was. F.J.I. looked at the picture but did not react. It appears Chandler then pointed to the penis and asked F.J.I. what it was. She first said, "I don't know" and then said, "That's a hot dog." When asked again what a "ding ding" was, F.J.I. stated, "It lives in the boy's body" and that it was right there by the "hot dog." She said she saw Tae's "ding ding" and then said, "He's got green hair." Upon further questioning, it was clear F.J.I. did not know the name of colors. Later, she said Tae's "ding ding" touched her and appeared to point to the front genital area on her own body. Later, when asked if she was dressed, F.J.I. indicated she took off her diaper off and let Tae touch her body.

In October 2003, Cherney and Chandler interviewed Henderson. Henderson denied having any sexual contact with F.J.I. but admitted babysitting her on February 24, 2003. Henderson said he had an appointment for a STD test in February 2003 but did not get it because he did not have the money to pay for it.

Dr. Katherine Melhorn, a pediatrician, testified that gonorrhea was a STD which could be spread by any mucosal contact and did not require actual intercourse or penetration for it to be transmitted. She testified the gonorrhea bacteria dies quickly and a child could not develop gonorrhea by sitting on a toilet seat recently used by a carrier. She said once exposed, the incubation period for gonorrhea is between 2 and 7 days and physical symptoms would man-

ifest after that time. She testified that gonorrhea can disappear after one treatment of the appropriate medication.

Henderson testified on his own behalf that he had a relationship with F.J.I.'s mother for several months between November 2002 and early January 2003, and that he lived with the mother during part of that time but that they broke up. In the early morning hours of February 24, 2003, Henderson called mother and asked if he could come over and mother agreed. They had consensual intercourse. Later that morning, mother asked him to babysit F.J.I. and her little brother. Before mother left for work that day, she told him she thought F.J.I. had a yeast infection or urinary tract infection because the child had a discharge from her vagina. Mother said she would take her to the doctor at the end of the week. Henderson did not see mother again until June or July of that year. Henderson said he asked mother why she gave detectives his name for something she knew he did not do. He said mother apologized and said the matter was dropped. At mother's request, Henderson babysat F.J.I. again in September. F.J.I. was not fearful around him. Henderson admitted testing positive twice for the STD chlamydia but never for gonorrhea.

Henderson presented the testimony of two girlfriends with whom he engaged in sexual intercourse either before or after February 24, 2003. Both denied having been diagnosed with a sexually transmitted disease or having symptoms of one, but only one of them had actually been tested.

The jury found Henderson guilty. His motions for new trial, for judgment of acquittal, and pro se motions were denied. He was sentenced to 59 months' incarceration. He now timely appeals.

*Did the admission of the videotape interview of F.J.I. violate Henderson's right to confrontation?*

Henderson clearly challenged the admission of the Cherney and Chandler interview of F.J.I., both prior to trial and by making a timely objection at trial which the court agreed would be treated as a continuing objection. With respect to the confrontation issue, Henderson contends the recent United States Supreme Court decision of *Crawford v. Washington*, 541 U.S. 36, which was decided

on March 8, 2004, less than 2 weeks after Henderson was sentenced, requires his conviction be reversed. We agree.

The State does not dispute the *Crawford* standards apply in evaluating Henderson's claims but simply asserts the hearsay statements are not "testimonial" under *Crawford* and/or that Henderson forfeited his right to confrontation. Clearly, new constitutional principles apply to all cases pending on direct appeal when the decision is issued. See, *e.g., State v. Meeks*, 277 Kan. 609, 88 P.3d 789 (2004) (applying *Crawford* standards on direct appeal still pending at time *Crawford* opinion was issued); *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001) (applying decision of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 [2000], to case pending on direct appeal).

Whether a defendant's right to confrontation has been violated is a question of law subject to unlimited review. *State v. Saleem*, 267 Kan. 100, 107, 977 P.2d 921 (1999).

The trial court clearly followed the law existing at the time of trial as stated in *State v. Myatt*, 237 Kan. 17 which held that K.S.A. 60-460(dd) was constitutional on its face under the standards of *Ohio v. Roberts*, 448 U.S. 56.

However, when *Crawford* was decided in March 2004, the majority held the *Roberts* analysis to be incorrect. The use of hearsay standards of reliability when addressing Sixth Amendment confrontation issues was abandoned, at least when "testimonial" evidence is at issue. 541 U.S. at 62-68. The basic premise of *Crawford* is that out-of-court testimonial statements are not admissible unless a witness was unavailable and the defendant had a prior opportunity to cross-examine the witness.

We must thus first determine if F.J.I.'s statements to Cherney and Chandler are testimonial under *Crawford* standards. If the statement is nontestimonial, we are allowed the flexibility of developing our own rules of evidence to test its admissibility. 541 U.S. at 68. However, we are not given any precise instructions as to what evidence is to be considered testimonial, as the *Crawford* opinion stated: "We leave for another day any effort to spell out a comprehensive definition of 'testimonial.' Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary

hearing, before a grand jury, or at a formal trial; and to police interrogations." 541 U.S. at 68.

But, it is helpful to our analysis that the statements involved in *Crawford* were from a *Mirandized* police interrogation of the defendant's wife who was present at the time her husband allegedly stabbed a man who had earlier attempted to rape her. *Crawford* held that "[s]tatements taken by police officers in the course of interrogations [were] also testimonial under even a narrow standard" and "fall squarely" within a class of testimonial statements. 541 U.S. at 52-53.

The only explicit statement by the Supreme Court was that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." 541 U.S. at 68. The Court also noted that "[v]arious formulations of this core class of 'testimonial' statements exist." 541 U.S. at 51. The Court referenced *"ex parte* in-court testimony or its functional equivalent" such as affidavits *"or similar pretrial statements that declarants would reasonably expect to be used prosecutorially."* (Emphasis added.) 541 U.S. at 51. The Court also cited an *amici's* formulation that included "statements that were made under circumstances *which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."* (Emphasis added.) 541 U.S. at 52. Although the Supreme Court did not expressly adopt these formulations, it noted that the formulations all shared a "common nucleus," implying they were appropriate for consideration. 541 U.S. at 52.

The State seizes upon the "reasonably expect to be used prosecutorily" phrase and argues that as a 3-year-old, F.J.I. could not reasonably believe her statements would be used at trial. If we were to adopt this standard, we would decide a serious constitutional issue based on the subjective intent of the declarant or on a "reasonable child" standard. Neither choice is logical or provides the more certain result that *Crawford* seems to require or that was found lacking under *Roberts*.

In *Crawford*, the Supreme Court noted that statements from a 4-year-old to police in *White v. Illinois*, 502 U.S. 346, 349-51, 116

L. Ed. 2d 848, 112 S. Ct. 736 (1992), were likely testimonial. 541 U.S. at 58 n.8, 61. Likewise, many post-*Crawford* cases appear to be applying a much more objective standard in determining whether out-of-court statements are "testimonial" under *Crawford*. See *United States v. Summers*, 414 F.3d 1287 (10th Cir. 2005) (witness' statement is testimonial if a reasonable person in her position would objectively foresee that a statement might be used in a subsequent investigation or prosecution); *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004) (proper inquiry is whether a reasonable person in the declarant's position would anticipate his or her statement being used against the accused in investigating and prosecuting a crime); *People v. Sisavath*, 118 Cal. App. 4th 1396, 13 Cal. Rptr. 3d 753 (2004) (child's statement to forensic interviewer was testimonial because reasonable person would expect it to be used prosecutorially); *State v. Grace*, 107 Hawaii 133, 143, 111 P.3d 28, *cert. denied* 107 Hawaii 348 (2005) (holding the pertinent question is whether an objective observer would reasonably expect the statement to be available for use in a prosecution); *State v. Snowden*, 385 Md. 64, 83, 867 A.2d 314 (2005) (statement is testimonial if made "under circumstances that would lead an objective declarant reasonably to believe that the statement would be available for use at a later trial"); *State v. Mack*, 337 Or. 586, 594, 101 P.3d 349 (2004) (rejecting State's argument that declarant's subjective intent controlled whether statement was testimonial).

Our Supreme Court in *State v. Lackey*, 280 Kan. 190, 120 P.3d 332 (2005), applied an objective standard in determining whether a particular out-of-court statement was testimonial. *Lackey* held that interviews conducted during police investigations resulted in statements that a witness would expect to be used at trial and could arguably be construed as testimonial under *Crawford*. 280 Kan. at 200. The witness in *Lackey* was not a child but there is no indication in *Lackey* that statements of a child witness would be treated differently.

Several courts have rejected arguments that a young child's statements, because of limited cognitive and developmental skills, are always nontestimonial. See *People v. Sisavath*, 118 Cal. App.

4th at 1402 n.3; *State v. Grace*, 107 Hawaii at 143; and *Snowden*, 385 Md. at 90.

Courts have applied an age-equivalent standard, *State v. Scacchetti*, 690 N.W.2d 393, *rev. granted* (Minn. App. 2005), and *State v. Krasky*, 696 N.W.2d 816, *rev. granted* (Minn. App. 2005), are pending before the Minnesota Supreme Court. A different panel of the Minnesota Court of Appeals held a 3-year-old's statement to a child protection worker was testimonial, implicitly rejecting an age-equivalent standard. *State v. Bobadilla*, 690 N.W.2d 345, *rev. granted* (Minn. App. 2004). Upon review, the Minnesota Supreme Court reversed the finding that the child's statement was testimonial, looked to the clearly delineated purpose of the Minnesota statutory scheme to protect the health and welfare of children, and held the interview by the child protection worker was not testimonial. Important was the fact that neither the child nor the interviewer was acting "to a substantial degree, in order to produce a statement for trial." *State v. Bobadilla*, 709 N.W.2d 243, 254 (Minn. 2006).

The State has also cited *In re D.L.*, 2005 WL 1119809 (Ohio App. 2005), an unpublished decision, which involves statements to a nurse practitioner who was not found to be working on behalf of or in conjunction with police officers. However, the court did consider the perspective of the victim, relying on the Minnesota *Scacchetti* case. Slip op. at 4.

In addition, we must point to the result and reasoning of *State v. Vigil*, 127 P.3d 916 (Colo. 2006). The Colorado Court of Appeals decision, 104 P.3d 258, that a doctor member of a child protection team was allowed to testify as to observations and findings but not to the child's statement identifying her assailant was reversed in part and affirmed in part by the Colorado Supreme Court.

A significant ruling in *Vigil* is the apparent partial adoption of the objective witness test from the perspective of the child. In holding a child's statement is not testimonial, the Colorado Supreme Court stated:

"Thus, from the perspective of an objective witness in the child's position, it would be reasonable to assume that this examination was only for the purpose of medical diagnosis, and not related to the criminal prosecution. No police officer

was present at the time of the examination, nor was the examination conducted at the police department. The child, the doctor, and the child's mother were present in the examination room. [FN8]".

"FN8. We emphasize that the objective witness test involves an analysis separate from and in addition to the police interrogation test. For example, if a child makes a statement to a government agent as part of a police interrogation, his statement is testimonial irrespective of the child's expectations regarding whether the statement will be available for use at a later trial." 127 P.3d at 926.

However, in deciding the case before us, the logic of the Maryland *Snowden* opinion is persuasive:

"To allow the prosecution to utilize statements by a young child made in an environment and under circumstances in which the investigators clearly contemplated use of the statements at a later trial would create an exception that we are not prepared to recognize. [Footnote omitted.] Thus, we are satisfied that an objective test, using an objective person, rather than an objective child of that age, is the appropriate test for determining whether a statement is testimonial in nature." 385 Md. at 90-91.

Determining whether a statement is testimonial based on subjective intent of a declarant brings into issue all the problems of *Ohio v. Roberts*, 448 U.S. 56, pointed out in *Crawford*, 541 U.S. at 62-67. We reject the State's subjective argument and adopt an objective reasonable person standard in making our determination of when a witness' out-of-court statements are testimonial within the meaning of *Crawford*.

The only trial evidence of F.J.I.'s version of events came through the admission of the videotaped interview of her by Chandler, the SRS investigator, and Detective Cherney which occurred after the medical clinic's report confirmed that F.J.I. had gonorrhea. Proper objections were made that the Confrontation Clause was being violated by admission of the videotaped statement.

Statements given to police and/or child protection workers have been the subject of a number of cases post-*Crawford*. In *Crawford*, the Supreme Court noted that statements to police officers during the course of interrogations "fall squarely" in the category of testimonial statements. 541 U.S. at 52-53. The Court also noted it used the term "interrogation" in a colloquial rather than a technical, legal sense. 541 U.S. at 53 n.4. Thus, a witness' recorded

statement knowingly given in response to structured police questioning is "undeniably testimonial."

State and federal courts have held that interviews of purported child abuse victims conducted by child protection agencies *in conjunction with law enforcement officials* are testimonial under *Crawford*. See *People v. Sisavath*, 118 Cal. App. 4th at 1402 (child's statement to forensic interviewer held to be testimonial); *Contreras v. State*, 910 So. 2d 901 (Fla. App. 2005) (videotaped statement to child protection team testimonial); *In re T.T.*, 351 Ill. App. 3d 976, 990, 815 N.E.2d 789 (DCFS process of investigating child sex abuse allegations sufficiently conducted with an eye toward prosecution renders 7-year-old's statement testimonial).

A contrary result was reached in *People v. Geno*, 261 Mich. App. 624, 683 N.W.2d 687 (2004), where the court found the *Crawford* issue was not before the court but opined the statement was not testimonial because the interviewer was not a government employee and the statement was not equivalent to an in-court statement. 261 Mich. App. at 631. The private agency's assessment in *Geno* occurred before the police had been contacted.

The State further argues that because prompt investigations of medical reports are required, the statement is similar to a victim communicating to a health care provider after an assault.

Admissibility of out-of-court statements to medical personnel is not directly in issue here, but the State makes an argument that they are comparable to the statement in issue here. The focus in most cases is on the purpose of the declarant's encounter with the health care provider. *State v. Moses*, 129 Wash. App. 718, 119 P.3d 906 (2005). When the health care provider is not a government employee and there was no indication of a purpose to prepare testimony for trial, the statements may be nontestimonial. See *State v. Fisher*, 130 Wash. App. 1, 108 P.3d 1262 (2005) (statement made to physician morning after assault); see also *Scacchetti*, 690 N.W.2d 393 (statement to physician in order to obtain medical diagnosis, even if videotaped, not testimonial); *State v. Vaught*, 268 Neb. 316, 682 N.W.2d 284 (2004) (statements to physician in course of seeking and receiving medical treatment shortly after assault not tes-

timonial; exam not initiated by government action); *State v. Vigil,* 127 P.3d 916 (2006) (previously discussed herein).

Courts have differed on whether informal statements made to a police response to a 911 call or other dispatcher information are testimonial. Two cases where this issue is involved appear to be before the United States Supreme Court. See *Hammon v. State,* 829 N.E.2d 444 (Ind. 2005), *cert. granted* 126 S. Ct. 552 (October 31, 2005), and *State v. Davis,* 154 Wash. 2d 291, 303-04, 111 P.3d 844 (2005), *cert. granted* 126 S. Ct. 547 (October 31, 2005).

The State's attempt to compare F.J.I.'s SRS/police interview with statements to medical personnel or emergency responders is not persuasive. Clearly, the purpose of the interview with F.J.I. was to determine if a crime had been committed. The interview occurred in a government building in a structured form. Prepared drawings of male and female subjects were used. It was a joint SRS/law enforcement investigation. While Chandler led the interview, Detective Cherney was present and asked questions.

We hold the taped interview of F.J.I. by Chandler and Cherney is testimonial. It was improper for the court below to admit the evidence in the absence of Henderson's ability to cross-examine F.J.I.

The State makes a fallback argument that if we do find F.J.I.'s statement to be testimonial, we should apply the doctrine of forfeiture and hold Henderson forfeited or waived the right to confront F.J.I. The State argues that when Henderson assaulted such a young child he would have known she would likely be unable to testify against him so forfeiture should be applicable here.

In *State v. Meeks,* 277 Kan. 609, 614, 88 P.3d 789 (2004), our Supreme Court recognized the doctrine of forfeiture by wrongdoing was still applicable under *Crawford.* Under that doctrine, a defendant who wrongfully procures the absence of a witness at trial is deemed to have forfeited or waived the right to confront that witness. 277 Kan. at 614-16. The doctrine was first applied in *Reynolds v. United States,* 98 U.S. 145, 158, 25 L. Ed. 244 (1878), and was eventually adopted into the Federal Rules of Evidence. See Fed. R. Evid. 804(b)(6).

To admit a statement against a defendant under the doctrine, the government must show the defendant " '(1) causes a potential witness's unavailability (2) by a wrongful act (3) undertaken with the intention of preventing the potential witness from testifying at a future trial.' [Citation omitted.]" *United States v. Cherry*, 217 F.3d 811, 819 (10th Cir. 2000). The preponderance of the evidence standard is the correct standard for the district court to use in determining whether the defendant procured the witness' absence. *United States v. Price*, 265 F.3d 1097, 1103 (10th Cir. 2001), *cert. denied* 535 U.S. 1099 (2002).

The cases applying the forfeiture doctrine in the main have been homicide cases where the declarant was the victim. See, *e.g.*, *United States v. Dhinsa*, 243 F.3d 635, 651 (2d Cir.), *cert. denied* 534 U.S. 897 (2001); *United States v. Cherry*, 217 F.3d at 814-15; *United States v. Emery*, 186 F.3d 921, 926 (8th Cir. 1999), *cert. denied* 528 U.S. 1130 (2000); *Meeks*, 277 Kan. at 614.

Causation between the action of the defendant and the witness' absence appears key. As noted by the Supreme Judicial Court of Massachusetts:

"[T]he causal link necessary between a defendant's actions and a witness's una- vailability may be established where (1) a defendant puts forward to a witness the idea to avoid testifying, either by threats, coercion, persuasion, or pressure; (2) a defendant physically prevents a witness from testifying; or (3) a defendant actively facilitates the carrying out of the witness's independent intent not to testify." *Commonwealth v. Edwards*, 444 Mass. 526, 541, 830 N.E.2d 158 (2005).

Other than the murder of the declarant, the causative factor has consistently been some act independent of the crime charged. For example, in forfeiture cases involving threats or coercion, the threats or coercion occurred *after* the events giving rise to the criminal charges. See, *e.g.*, *United States v. Montague*, 421 F.3d 1099, 1101 (10th Cir. 2005) (wife's statements to police could be used at trial when husband/defendant violated no contact order and met with wife several times prior to trial); *Steele v. Taylor*, 684 F.2d 1193, 1199 (6th Cir. 1982), *cert. denied* 460 U.S. 1053 (1983) (witness was under the control of the defendants who had procured her refusal to testify); *Commonwealth v. Edwards*, 444 Mass. 526 (defendant's action prior to trial in influencing or colluding with

witness to avoid testimony was enough to forfeit confrontation rights).

In our case there is no evidence of any acts by Henderson after the alleged assault. The State cites no case to us where the doctrine of forfeiture has been applied solely due to declarant's age. To accept the State's argument would severely limit the rights granted by the Sixth Amendment to the United States Constitution. It would open an exception to a constitutionally granted right that we are not prepared to adopt. We reject the State's argument that we should apply the forfeiture doctrine in this case.

The State did not raise a harmless error argument and such a contention has not been considered.

While the trial court's decision was defensible at the time of trial, when we apply *Crawford's* commands and reach the conclusion the videotaped interview of F.J.I. was testimonial and not admissible under application of the forfeiture doctrine, we are left with constitutionally prohibited evidence erroneously admitted, requiring reversal of the conviction and the granting of a new trial.

Henderson's followup argument is that without F.J.I.'s videotaped interview, there is insufficient evidence to support his convictions, which must therefore be vacated and the case dismissed.

We are required to reach this contention in a ruling ordering a new trial in a criminal matter for the reasons set forth in *State v. Elnicki*, 279 Kan. 47, 105 P.2d 1222 (2005).

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in a light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Ly*, 277 Kan. 386, 394, 85 P.3d 1200, *cert. denied* 541 U.S. 1090 (2004). Circumstantial evidence may establish even the gravest offenses. *State v. Davis*, 275 Kan. 107, 118, 61 P.3d 701 (2003).

In this case, F.J.I.'s infection with gonorrhea provided a basis for a reasonable factfinder to conclude that F.J.I. had been exposed to some type of sexual contact. Mother's testimony also provided a basis for a reasonable factfinder to conclude Henderson was the only person who had sufficient unsupervised contact with F.J.I. to

have transmitted the disease. There was other circumstantial evidence to support that conclusion. Although Henderson attacked the credibility of the various witnesses, an appellate court does not reweigh the evidence, determine the credibility of witnesses, or substitute its view of the evidence for that of the trial court. *State v. Mays*, 277 Kan. 359, Syl. ¶ 1, 85 P.3d 1208 (2004).

There was sufficient competent evidence presented to allow the State to retry Henderson.

Conviction reversed, sentence vacated, and case remanded for a new trial.