Daniel R. CASSELL, Appellant,

v.

STATE of Alaska, Appellee.

No. 5138.

Court of Appeals of Alaska.

May 28, 1982.

Ronald W. Drathman, John M. Murtagh, Walter Share, Drathman & Weidner, Anchorage, for appellant.

W. H. Hawley, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., COATS, J., and HODGES, Superior Court Judge.*

BRYNER, Chief Judge.

Daniel Cassell has appealed to this court from his conviction of first-degree murder and the sentence of life imprisonment that he received upon conviction. We affirm Cassell's conviction and sentence.

Daniel Cassell was responsible for the murder of his adoptive father, Colonel Robert Cassell. In the fall of 1978, when Cassell was nineteen years old, he and a group of younger teenagers planned his father's death. In order to entice them into killing Colonel Cassell, Daniel Cassell promised two of the boys involved in the planning that they would receive payment in the form of money and travel upon completion of the killing. After three separate plans by Cassell and his companions and two aborted attempts by the two boys to whom Cassell had promised payment, a plan was devised that was to prove successful. Cassell's two younger friends entered Colonel Cassell's home one night on the pretext of waiting for Daniel Cassell to return; Daniel Cassell had arranged to be out with a girlfriend that evening. When the Colonel retired for the night, the boys attacked and killed him in his bed, first using a tire iron to bludgeon him and then a knife to stab him to death. During the entire period when the various plans to kill Colonel Cassell were being formulated and when the attempts on his life were made, Daniel Cassell supplemented his promises of recompense by applying constant pressure to both of his young accomplices in order to assure that they would complete the murder.

At his trial, Cassell's primary claim was that, in dealing with the group of juveniles that included the two youths who actually committed the killing, he had not been serious and that he did not think that he would be taken seriously or that the murder would actually be carried out. The jury's verdict convicting Cassell of first-degree murder makes it apparent that this defense was rejected.

Cassell's arguments on the merits of his appeal are two-fold. First, Cassell contends that the prosecution was incorrectly permitted to admit hearsay testimony before the grand jury in obtaining his indictment. Second, Cassell argues that the trial court committed error by refusing to give the jury a requested instruction that would have permitted a conviction of the lesser offense of soliciting the commission of a crime, under former AS 11.10.070. Cassell maintains that, under the evidence presented below, this lesser offense was necessarily included in the offense of first-degree murder and that an instruction on the lesser offense was, therefore, mandatory. We are not persuaded by either of Cassell's arguments.

■ Cassell argues that extensive use of hearsay during his grand jury proceedings vitiates his indictment, thus requiring his conviction to be overturned. We hold that Cassell has failed to preserve this issue for appeal. Although Cassell argues that this court should consider the hearsay issue under the plain error doctrine, to do so would be inappropriate. Cassell's argument

---

* Hodges, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

overlooks the long-standing rule that hearsay testimony, when it is not properly objected to at trial, is considered to be admissible evidence. *Byrd v. State*, 626 P.2d 1057, 1058 (Alaska 1980); *Reese v. Geiermann*, 574 P.2d 445, 446 (Alaska 1978); *City of Anchorage v. Nesbett*, 530 P.2d 1324, 1336 (Alaska 1975).[1] Because it is proper at the trial court level to receive hearsay when no objection has been made, application of the plain error doctrine will rarely, if ever, be appropriate on this issue at the appellate level. It is difficult to see how plain error could be found when, under settled law, admission of hearsay is not error at all in the absence of timely objection. *See Hayes v. State*, 581 P.2d 221, 222 n.2 (Alaska 1978).

It must be recognized that Cassell's case is one of first impression, since it involves hearsay introduced before the grand jury, not during trial. However, this fact does not affect the result we reach. Because grand jury proceedings are conducted *ex parte*, it goes without saying that the defense cannot object to the improper use of hearsay at the time it is presented. Nevertheless, under our rules of discovery, defense counsel has routine access to the transcript of grand jury proceedings after an indictment. *See* Alaska R.Crim.P. 6 and 16. Under the provisions of Alaska R.Crim.P. 16(f), it is evident that the pretrial omnibus hearing is ordinarily the occasion at which defense counsel should present objections based upon assertedly improper use of hearsay before the grand jury. We note, specifically, that Alaska R.Crim.P. 16(f)(3) provides:

*Pre-Trial Motions and Requests—Effect of Failure to Raise at Hearing.* All motions and other requests made prior to trial should ordinarily be reserved for and presented at the omnibus hearing unless the court otherwise directs. Subject to constitutional limitations failure to raise at the omnibus hearing any pre-trial error or issue, other than the failure of the indictment to show jurisdiction or to charge an offense, constitutes waiver of such error or issue unless the party concerned does not then possess the information necessary to raise it.[2]

Accordingly, we believe that a failure to raise a pretrial objection to hearsay presented before the grand jury must be viewed as tantamount to a failure to object to the introduction of hearsay at trial. It follows that, in the absence of a timely pretrial objection, hearsay testimony presented to and considered by the grand jury should be regarded on appeal as constituting admissible and fully competent evidence.

In the present case, Cassell did make an initial, timely objection through counsel, on the basis that hearsay was improperly presented to the grand jury. However, Cassell's attorney later expressly withdrew this objection. The objection was never renewed. Because Cassell withdrew his motion to dismiss the indictment against him based on the assertion that improper hearsay evidence had been presented to the grand jury, we deem any hearsay presented to the grand jury to have been admissible evidence properly subject to consideration by the grand jury and, for that reason, we hold the plain error doctrine to be inapplicable to this issue.[3] We therefore find no

---

1. We recognize that the rule admitting hearsay in the absence of an objection might, when applied in the setting of criminal trials, raise questions under the confrontation clauses of the United States and Alaska Constitutions. Such potential problems are inapposite here, since grand jury proceedings are conducted by the state *ex parte*, and the defendant's right not to have hearsay presented to the grand jury is secured solely by provisions of the Alaska Rules of Criminal Procedure, and not as a matter of state or federal constitutional law.

2. *See also* Alaska R.Crim.P. 12(b)(2), which provides, in relevant part:

(b) *Pre-Trial Motions.* Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Any or all of the following shall be raised prior to trial:

. . . .

(2) Defenses and objections based on defects in the indictment or information . . . .

3. We would, at any rate, conclude that application of the plain error doctrine to the present case could not be justified in this case under

merit to Cassell's argument concerning improper use of hearsay before the grand jury.

Cassell additionally maintains that, in light of the evidence presented below, inciting commission of a crime, in violation of former AS 11.10.070, was a lesser offense necessarily included in the offense of first-degree murder under former AS 11.15.010; thus, he contends that it was error for the trial court to refuse to instruct the jury on the lesser offense of inciting commission of a crime. Cassell's theory is that, if the trial court had given the lesser included offense instruction, the jury might have believed his testimony that he did not actually think his conversations about killing Colonel Cassell would be taken seriously, and the jury could thereby have found that he was innocent of murder and guilty only of inciting the commission of a crime.[4] This argument presupposes that this offense was one of general criminal intent.

■ We conclude, however, that inciting commission of a crime, as defined under former AS 11.10.070, constituted a specific intent offense. The crime of inciting required that a person act "wilfully and knowingly" to solicit, incite or induce another to commit a crime. Under the contemporary view, a distinction is commonly drawn between statutory language aimed exclusively at the element of intent, such as the word "intentionally," and more general statutory language dealing with the requirement of knowledge, such as the words "wilfully" and "knowingly." *See, e.g.,* Model Penal Code § 2.02(2)(a) and (b) (Proposed Official Draft 1962). However, former AS 11.10.070 derived from a 1957 amendment to the 1949 statute enacted as § 65–3–7 ACLA 1949. *See* § 1 ch. 56 SLA 1957. There is no apparent indication that

the more modern distinction between words going to the element of intent and words going to the more generalized element of knowledge was contemplated by the drafters of former AS 11.10.070. Since ambiguities in penal statutes must be narrowly read and construed strictly against the government, we believe that the requirement in former AS 11.10.070 that a person act "wilfully and knowingly" in inciting commission of a crime must be read to mandate a specific intent that the crime incited be committed.

Common sense, as well as normal rules of statutory construction, also supports this view. If, as Cassell argues, former AS 11.-10.070 did not require proof that the defendant specifically intended the crime that he incited be committed, then offhand comments, jokes and sarcastic remarks made among friends in the most casual of conversations and never taken seriously could have amounted to crimes chargeable and punishable as felonies under this former statute.[5]

A final factor that leads us to the conclusion that inciting commission of a crime under former AS 11.10.070 must be deemed to have been a specific intent crime is a consideration of the specific words of the statute that defined the *actus reus* of the offense itself. Under former AS 11.10.070, in order to be convicted, it was necessary for a person to solicit, incite or induce another to commit a crime. We believe that the words "solicit," "incite" and "induce," when viewed in light of their usual and common definitions and in the specific context of this statute, must all be deemed to imply an intent on the part of the actor that the object of the solicitation, inducement or incitement actually be carried out. For example, we do not think it could fairly

the recent holding of the majority of this court in *Gaona v. State*, 630 P.2d 534 (Alaska App. 1981).

4. Former AS 11.10.070 provided in part:

*Inciting commission of crime.* A person who wilfully and knowingly solicits, incites or induces another to commit a felony or a misdemeanor in this state,

(1) if the act solicited, incited or induced is a felony, is guilty of a felony and upon conviction is punishable by a fine of not more than $3,000, or by imprisonment for not more than three years, or by both . . . .

5. A $3,000 fine and three years' imprisonment was the maximum penalty for inciting commission of a felony under former AS 11.10.070.

be said that a person acting entirely in jest by suggesting that a friend commit a crime for some patently absurd reason could accurately be said to have committed an act of solicitation, incitement or inducement under the terms of the former statute, without regard to the requisite mental state that it prescribed. Thus, even if the words "wilfully and knowingly" as used in former AS 11.10.070 did not in and of themselves render the statute a specific intent crime, the requirement of specific intent was nevertheless implicit in the legislature's use of the words "solicits, incites or induces." [6]

We believe, moreover, that our interpretation of former AS 11.10.070 comports with the primary function intended for the statutory provision. The essential function contemplated for the offense of inciting the commission of a crime was to allow punishment of persons who had engaged others to commit crimes for them before the intended crime had actually been committed or even attempted. In instances when the contemplated crime was in fact carried through to completion, the person ultimately responsible for soliciting, inducing or inciting its commission could always be charged, convicted and punished as a principal. See former AS 12.15.010. In such instances it is apparent that former AS 11.10.070 was unnecessary and superfluous. Thus, this former law was meant primarily to apply to cases where the ultimate criminal act remained inchoate. This, we believe, accounts for the relatively low maximum penalty uniformly applicable upon conviction of the former statute, regardless of the seriousness of the particular felony that might have been the object of solicitation, inducement or incitement.

Turning to the present case, our conclusion that former AS 11.10.070 required a specific intent that the contemplated criminal conduct be accomplished is dispositive of Cassell's claim that he was entitled to a lesser included offense instruction under this provision. As we have stated, Cassell's theory was that the jury could have believed that, in dealing with the youths who killed Colonel Cassell, he never intended Colonel Cassell's murder to be carried out. If this, in fact, had been the case, then Cassell would have been entitled to an acquittal under former AS 11.10.070, as well as under the first-degree murder statute.

It is still correct, as Cassell asserts, that inciting the commission of a crime was properly a lesser included offense of first-degree murder under the facts of this case: it would theoretically have been possible for the jury to find that the cause of Colonel Cassell's death was due to circumstances other than the bludgeoning and knifing by Cassell's accomplices. If such a finding could rationally be supported by the evidence, then Cassell might properly have been guilty only of inciting commission of a crime. In the present case, however, because the evidence actually before the jury was uncontroverted in establishing that Colonel Cassell was killed by Daniel Cassell's accomplices and that their acts were not legally excused or justified, there was no rational basis in the evidence to support Cassell's conviction of the lesser offense of inciting the commission of a crime, while at the same time supporting an acquittal of the murder charge. Under such circumstances, it is well established that a jury instruction on a lesser offense is not necessary.[7] See Valentine v. State, 617 P.2d 751,

6. We note that under AS 11.31.110, the provision of the Alaska Revised Criminal Code dealing with inciting commission of a crime, an "intent to cause another to engage in conduct constituting a crime" is specifically required as an element of the offense. Although Cassell argues that this statutory language embodies a new intent requirement, we are inclined toward the view that it simply clarifies and makes unequivocal the requirement that existed under former AS 11.10.070.

7. Cassell additionally argues that Braham v. State, 571 P.2d 631 (Alaska 1977), cert. denied, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978), militates in his favor. Although in Braham a jury instruction was given stating that the offense of inciting involved "no more than asking or enticing someone to commit a crime," id. at 649, this instruction went on to speak in terms of specific intent, expressly stating that "solicitation is a step in the direction of a target crime." Id. Thus, Braham does not hold that solicitation is only a general intent

753–54 (Alaska 1980); *Christie v. State*, 580 P.2d 310, 317 n.22 (Alaska 1978). Consequently, we find no error in the trial court's failure to instruct on former AS 11.10.070.

■ Cassell argues, finally, that the sentence of life imprisonment he received for his crime was excessive. While we agree with Cassell that life imprisonment is a severe sentence for a nineteen-year-old defendant with a relatively good background of past behavior, from our review of the record we cannot say that the trial court in this case was clearly mistaken.

Cassell committed one of the most heinous of all crimes: the premeditated murder of another person. Of further significance to the appropriateness of the sentence that Cassell received is the fact that he chose to use others to commit the offense for him. *See, e.g., Hoover v. State*, 641 P.2d 1263, (Alaska App., 1982). Crimes of violence committed on a contract basis must be deemed to be among the most reprehensible of offenses. *See Burleson v. State*, 543 P.2d 1195 (Alaska 1975).

Moreover, in light of the unsuccessful plans for Colonel Cassell's murder in which Daniel Cassell participated and the two failed attempts at murder of which he was aware, we believe that the sentencing judge in this case was fully justified in totally rejecting Cassell's contention that he did not think his talk of killing Colonel Cassell would be taken seriously. Of additional relevance is the fact that Cassell chose a group of impressionable and misguided youths as his entourage in planning his adoptive father's death. It was from among the members of this group that Cassell managed to find two individuals who could be persuaded, cajoled and threatened into perpetrating the actual killing. The two youths who actually committed the offense were considerably younger than Cas-

sell himself; they had troubled backgrounds and were particularly vulnerable to Cassell's continuous pressure and influence. We do not believe that, in fashioning the sentence in this case, the superior court judge could properly ignore the tragic and devastating effect that Cassell's conduct was to have on the group of children with whom he chose to plan and carry out the murder of his adoptive father.

It remains to be observed that the sentencing court, in considering Cassell's conduct, was not confronted with an offense that could be characterized as involving an isolated and thoughtless criminal act. Rather, in light of the evidence concerning the two failed attempts at killing Colonel Cassell that preceded his actual murder, the sentencing court could well have concluded that Daniel Cassell pursued the objective of killing his adoptive father with unusual perseverance, tenacity and ruthlessness. We are not unmindful of the evidence in the record indicating that Colonel Cassell had made unsolicited homosexual advances toward Daniel Cassell in the past. Yet, when this evidence is viewed in light of the fact that Daniel Cassell was nineteen years of age at the time of his offense and that, having reached the age of majority, he was presumably free to leave his adoptive father's home, we think that the past conduct of Colonel Cassell retains little if any force as a potential factor mitigating Daniel Cassell's crime.[8]

Despite the length of Cassell's sentence, the trial court recognized his genuine need for some form of psychological counselling. The court provided for this need by including appropriate recommendations as part of the sentence it imposed.

Having carefully examined the record in this case, we conclude that the sentencing

crime; to the contrary, in our view it illustrates the point that an intent that the target crime be consummated is an implicit component of the statutory language contained in former AS 11.-10.070.

**8.** It is of further importance to observe that, countervailing Cassell's claim that his actions were motivated by the homosexual advances of

his adoptive father, substantial evidence was presented by the state indicating that Cassell was aware of the fact that he was the sole named beneficiary of his adoptive father's will and that his desire to consummate the murder was, accordingly, spawned by the prospect of a pecuniary gain.

court carefully and appropriately considered and weighed all of the applicable *Chaney*[9] criteria. There is no basis upon which we can conclude that the sentence imposed was excessive.

The conviction and sentence are therefore AFFIRMED.

SINGLETON, J., not participating.

9. *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).