Travis D. CLARK, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8890.

Court of Appeals of Alaska.

Jan. 16, 2009.

---

Craig Condie, Assistant Public Defender, Palmer, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Travis D. Clark appeals his conviction for assaulting his girlfriend, Loretta B. Amouak.

Although our prior decision in this case, *Clark v. State*, Alaska App. Memorandum Opinion No. 5112 (September 6, 2006), 2006 WL 2578642, contains a detailed description of the underlying facts, the pertinent facts can be described in a few paragraphs:

Amouak, who had been drinking, and whose driver's license apparently was revoked, borrowed Clark's truck and drove it into a ditch. Clark and a friend of Amouak's, Kimberly Yadon, went out to pick up Amouak, and Yadon brought her back home. Several hours later, Amouak called Yadon, and Yadon brought her to the hospital with a fractured nose, a black eye, and bruises on her neck, arms, and legs.[1]

Amouak told the emergency room personnel that she sustained these injuries when her boyfriend (*i.e.*, Clark) assaulted her. At trial, Clark claimed self-defense: he asserted that Amouak had attacked him, and that he had acted to protect himself.[2] Thus, as we noted in our prior decision, "[t]he main question before the jury was ... not whether Clark had caused Amouak's injuries[,] but whether ... her injuries resulted from an assault." *Clark*, Memorandum Opinion No. 5112 at 13, 2006 WL 2578642 at *7.

Although Amouak was scheduled to be a witness at Clark's trial, she ultimately claimed the Fifth Amendment and declined to testify. To prove how Amouak sustained her injuries, the State relied on hospital records which described the statements that Amouak made to the emergency room personnel—in particular, her assertions that she sustained her injuries as the result of an assault by her boyfriend.[3]

The question presented on appeal is whether the trial judge properly allowed the State to introduce this hearsay evidence (*i.e.*, the hospital records describing Amouak's statements to the emergency room person-

nel) or whether, as Clark contends, this evidence should have been excluded as "testimonial" hearsay under the confrontation clause of the Sixth Amendment as construed in *Crawford v. Washington*[4] and *Davis v. Washington*.[5]

*The admissibility of the hospital records under Alaska Evidence Rule 803(4), the hearsay exception for statements made for purposes of medical diagnosis or treatment*

Before we turn to the confrontation clause issue, we should briefly recapitulate the conclusion we reached in our previous decision in Clark's case concerning the admissibility of the hospital records under the hearsay rules.

Amouak's statements to the emergency room personnel were hearsay, in that they were introduced at Clark's trial for the truth of the matters asserted in the statements. However, for the most part, those statements were admissible under the hearsay exception codified in Alaska Evidence Rule 803(4)—the exception for statements made for the purpose of medical diagnosis or treatment.

Under Rule 803(4), the State could introduce evidence that Amouak told the emergency room personnel that she sustained her injuries as a result of being struck by another person (as opposed to being injured in a car accident, or in a fall, or by some other cause), as well as evidence of Amouak's statements describing such things as the number of blows, the manner in which they were inflicted, and the amount of force behind these blows—for all of this would be relevant to medical diagnosis and treatment.

However, the medical diagnosis and treatment hearsay exception does not normally encompass a patient's identification of the person who hurt them or a patient's attributions of fault.[6] Because of this limitation,

---

1. *Clark*, Memorandum Opinion No. 5112 at 1–3, 2006 WL 2578642 at *1.

2. *Id.*, Memorandum Opinion No. 5112 at 13, 2006 WL 2578642 at *7.

3. *Id.*, Memorandum Opinion No. 5112 at 2, 2006 WL 2578642 at *1.

4. 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

5. 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

6. *See Johnson v. State*, 579 P.2d 20, 22 (Alaska 1978); *see also State v. Nollner*, 749 P.2d 905, 908–09 (Alaska App.1988); *Sluka v. State*, 717 P.2d 394, 399 & 399–400 n. 6 (Alaska App.1986).

Clark had a valid hearsay objection to the hospital records to the extent that they reported that Amouak identified Clark as the one who struck her, or to the extent that Amouak might have asserted that Clark had no justifiable reason to do so.

But as we explained in our prior decision, Clark made no hearsay objection when the State offered the hospital records.[7] Several days later, Amouak invoked her privilege against self-incrimination (after testimony at the trial indicated that Amouak had been driving while intoxicated, and driving with a revoked license, when she borrowed Clark's truck).[8] Only then, after Amouak invoked her Fifth Amendment privilege and refused to testify, did Clark's attorney belatedly raise a hearsay objection to the hospital records.[9] The trial judge ruled that Clark's objection was untimely.[10]

In our earlier decision in Clark's appeal, we upheld the trial judge's ruling that Clark's hearsay objection was untimely. Clark's primary argument in favor of allowing him to make a tardy objection was that he purportedly had no reason to object to the hearsay in the hospital records until it became clear that Amouak was unavailable as a witness. But we noted that Amouak's availability as a witness did not affect the admissibility of the hospital records—because the medical diagnosis and treatment hearsay exception "does not hinge on whether the declarant is available to testify".[11] We further explained that, under Alaska law, "it is proper [for] a trial court ... to receive hearsay when no objection has been made".[12] For these reasons, we concluded that Clark's trial judge "did not err by admitting the hearsay testimony that Clark now challenges or by denying Clark's belated motion to strike Amouak's statements on hearsay grounds." [13]

Given our ruling on this hearsay question in our prior decision, the only issue before us now is Clark's claim that, even though Amo-

uak's out-of-court statements may have been properly admitted under the law governing hearsay evidence, those statements nevertheless should have been excluded under the confrontation clause of the Sixth Amendment.

### The district court's findings on remand

In our earlier decision in Clark's case, we concluded that we could not resolve the confrontation clause issue without additional information regarding the circumstances surrounding Amouak's statements at the emergency room. We therefore directed the district court to hold an evidentiary hearing to inquire into the nature and purpose of Amouak's statements to the emergency room personnel.

At the evidentiary hearing, Amouak testified that her purpose in telling the doctor what happened (*i.e.*, how she came to be injured) was to obtain medical treatment—because she was concerned about the injuries to her face. Amouak said that she heard something break in her face, and she was worried that her face would be deformed.

As to the emergency room doctor and nurse who interviewed Amouak, the district court concluded that they questioned Amouak about her injuries, and recorded Amouak's answers, purely for medical purposes.

### Clark's attack on the district court's findings on remand

In the present appeal, Clark argues that he was denied due process of law at the evidentiary hearing on remand. Clark argues that the district court committed error by relying on Amouak's testimony at that hearing after Amouak invoked the Fifth Amendment rather than answer certain questions that Clark's attorney posed to her during cross-examination.

---

7. *Clark*, Memorandum Opinion No. 5112 at p. 3, 2006 WL 2578642 at *2.

8. *Id.*

9. *Id.*

10. *Id.*

11. *Id.*, Memorandum Opinion at 5, 2006 WL 2578642 at *2.

12. *Id.*, quoting *Cassell v. State*, 645 P.2d 219, 221 (Alaska App.1982).

13. *Id.*

The questions that Clark's attorney wanted to ask Amouak dealt with the facts (1) that Amouak had apparently been driving while intoxicated, and driving with a revoked license, when she borrowed Clark's truck on the night of the incident, and (2) that when Amouak summoned her friend, Kimberly Yadon, to transport her to the hospital, they agreed that they would lie to the authorities about Amouak's driving. Amouak invoked her Fifth Amendment privilege rather than answer these questions concerning what happened earlier on the evening of the assault (before she reached the hospital).

■ Clark now argues that, because Amouak invoked her Fifth Amendment privilege and refused to answer questions about these matters when she testified at the evidentiary hearing on remand, the district court should have struck Amouak's evidentiary hearing testimony in its entirety. We disagree. It is true that when a witness invokes an evidentiary privilege and refuses to answer questions pertaining to their potential bias or motive to fabricate, a court may be required to strike the witness's testimony in its entirety. But if "the specific subject matter [of] the question as to which the privilege is invoked is cumulative or remote", or if "the defendant is [otherwise] afforded an adequate independent means to establish the witness'[s] bias", the court can allow the witness's testimony to be considered by the finder of fact. *Jackson v. State*, 695 P.2d 227, 230 (Alaska App.1985).

Here, the finder of fact was the district court itself, and the court was well aware of the factual basis for the defense attorney's questions. At Clark's trial, Kimberly Yadon testified that, on the night of the incident, Amouak was drinking and had driven Clark's truck into a ditch. Yadon further testified that, at Amouak's request, she agreed to lie about whether Amouak had been driving that evening—so that Amouak could escape any charges connected to her driving of the truck.

At the evidentiary hearing on remand, Clark's attorney relied on these facts to argue that Amouak's testimony at that evidentiary hearing should not be believed. When the prosecutor questioned whether Clark's attorney could rely on testimony given at trial to attack Amouak's testimony at the evidentiary hearing on remand, the district court declared that this was proper, and that the court would take judicial notice of the testimony already given at Clark's trial. Thus, even though Amouak refused to answer questions on these matters, Clark's attorney was able to argue his point.

Accordingly, we hold that the district court could properly consider and rely on Amouak's testimony at the evidentiary hearing despite Amouak's refusal to answer the defense attorney's questions on these matters.

*Did the admission of the hearsay in the hospital records violate Clark's Sixth Amendment right to confrontation?*

The remaining question is whether the confrontation clause of the Sixth Amendment precluded the State from introducing the hospital records at Clark's trial when those records contained hearsay evidence of Amouak's statements describing the assault.

In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that, even when hearsay evidence is admissible under the rules of evidence governing hearsay, the confrontation clause of the Sixth Amendment prohibits the government from introducing evidence of "testimonial" hearsay statements at a criminal trial unless the declarant (*i.e.*, the person who made the out-of-court statements) testifies at the trial, or unless the government shows that the declarant is unavailable to testify and that the defendant had a prior opportunity to cross-examine the declarant about those statements.[14]

Although *Crawford* declares that a statement is clearly "testimonial" if it is "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact," [15] the Supreme Court did not adopt a precise definition of "testimonial hearsay",

---

**14.** *Crawford*, 541 U.S. at 59, 124 S.Ct. at 1369.

**15.** *Id.*, 541 U.S. at 51, 124 S.Ct. at 1364.

nor did the Court attempt to outline the full scope of this term.

Numerous courts have considered the question of whether, or when, statements made to health care providers are "testimonial" for purposes of the Sixth Amendment. We believe that the most persuasive court decisions on this question are the ones issued after the Supreme Court's decision in *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

The issue presented in *Davis* was whether the hearsay account of a crime victim's statements to a 911 operator, describing an ongoing crime and identifying the perpetrator, should be deemed "testimonial" hearsay. The Supreme Court assumed, without deciding, that the 911 operators were police agents.[16] Nevertheless, the Court held that the victim's responses to the 911 operator's questions were not testimonial:

> Statements are nontestimonial, [even] when made in the course of police interrogation[, if the statements are made] under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. [On the other hand, statements made in answer to police interrogation] are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822, 126 S.Ct. at 2273–74.

The Court declared that its assessment in *Davis* was premised on the following aspects of the situation: (1) the victim was describing events as they were happening, not describing past events;[17] (2) the nature of the operator's questions and the victim's answers,

viewed objectively, showed that the elicited statements "were necessary to be able to resolve the present emergency, rather than simply to learn . . . what had happened in the past";[18] and (3) the victim's statements were not elicited in a formal interview; rather, they were excited statements elicited over the telephone in an environment that "was not tranquil, or even (as far as any reasonable 911 operator could make out) safe."[19] The importance of these circumstances, the Supreme Court explained, was that they "objectively indicate[d that the] primary purpose [of the interrogation] was to enable police assistance to meet an ongoing emergency. [The victim] simply was not acting as a *witness;* she was not *testifying.* What she said was not a weaker substitute for live testimony at trial[.]"[20]

Both *Crawford* and *Davis* dealt with police interrogations. (As we explained earlier, the Court decided *Davis* under the assumption that the 911 operators were agents of the police.) Thus, neither *Crawford* nor *Davis* directly addresses the issue before this Court: whether statements to health care providers are, or can be, "testimonial". Indeed, in *Davis*, the Supreme Court expressly declined to address the question of "whether and when statements made to someone other than law enforcement personnel are 'testimonial.'"[21] Nevertheless, after the Supreme Court issued its decision in *Crawford*, several courts have had to determine whether statements to a health care provider were "testimonial" for Sixth Amendment purposes.

Before *Davis* was decided, these courts often applied the "objective witness" formulation found in *Crawford*. That is, these courts tried to assess whether the statement was made under circumstances which would lead an objective witness—"an objectively reasonable person in the declarant's position"[22]—to

---

**16.** *Davis*, 547 U.S. at 823 n. 2, 126 S.Ct. at 2274 n. 2.

**17.** *Id.,* 547 U.S. at 827, 126 S.Ct. at 2276.

**18.** *Id.*

**19.** *Id.,* 547 U.S. at 827, 126 S.Ct. at 2276–77.

**20.** *Id.,* 547 U.S. at 828, 126 S.Ct. at 2277 (emphasis in the original).

**21.** *Id.,* 547 U.S. at 823, n. 2, 126 S.Ct. at 2274 n. 2.

**22.** *People v. Vigil,* 127 P.3d 916, 924 (Colo.2006) (*en banc*) (reviewing cases construing *Crawford* and concluding that the term "objective witness" refers to "an objectively reasonable person in the declarant's position").

reasonably believe that the statement would be available for use at a later criminal trial.[23]

Although this method of analysis may be useful in many situations, it can also lead to results that are inconsistent with *Davis.* The facts and the holding of *Davis* illustrate this point. It may be reasonable for a person to assume that, if they report a crime to 911 operators, their statements will be recorded and available for use in a future criminal prosecution. Nevertheless, the Court in *Davis* held that the crime victim's statements to the 911 operator were *not* "testimonial"— largely because of the circumstances in which they were given (an ongoing emergency), and the purpose for which they were given (to obtain police assistance to meet that emergency).

Indeed, a few pre-*Davis* decisions declined to follow the "objective witness" formulation of the test for "testimonial" hearsay articulated in *Crawford.* Instead, these courts— anticipating the Supreme Court's approach in *Davis*—focused on the question of whether the primary purpose of the interview was medical diagnosis and treatment (in which case the statement was not testimonial) or investigating a crime and developing testimony for trial (in which case the statement was testimonial).

For instance, in *State v. Vaught,* 268 Neb. 316, 682 N.W.2d 284 (2004), the Nebraska Supreme Court concluded, based on the following facts, that a statement made by a four-year-old sexual abuse victim to a doctor was not testimonial, even though the victim's statement identified her abuser:

> [T]he victim's identification of Vaught as the perpetrator was a statement made for the purpose of medical diagnosis or treatment. In the present case, the victim was taken to the hospital by her family to be examined[,] and the only evidence regarding the purpose of the medical examination, including the information regarding the cause of the symptoms, was to obtain medical treatment. There was no indication of a purpose to develop testimony for trial, nor was there an indication of government involvement in the initiation or course of the examination.

*Vaught,* 682 N.W.2d at 291–92 (citations omitted).[24]

Some courts have attempted to meld the confrontation clause analysis with the hearsay analysis by dividing the victim's statement into two parts: the victim's assertions concerning when and how the criminal conduct occurred (the statements that would be admissible under the hearsay exception for medical diagnosis and treatment) are deemed

---

**23.** *See, e.g., Vigil,* 127 P.3d at 926 (concluding that a seven-year-old victim's statements to a doctor were not testimonial because, under the circumstances, a reasonable seven-year-old would not have believed that those statements would be used at a criminal trial); *State v. Scacchetti,* 690 N.W.2d 393, 396 (Minn.App.2005) (concluding that a three-year-old victim's statements were not testimonial because the examination was for purposes of medical diagnosis and the defendant failed to show that the circumstances led the victim to reasonably believe that her disclosures would be available for use at a later criminal trial); *State v. Sheppard,* 164 Ohio App.3d 372, 842 N.E.2d 561, 563, 567 (2005) (concluding that a six-year-old victim's statements were not testimonial because the examination was for purposes of medical diagnosis and there was no evidence to show that the victim realized that her statements would be used in a criminal prosecution); *State v. Saunders,* 132 Wash.App. 592, 132 P.3d 743, 746, 749 (2006) ("Here, there is no reason to believe that a reasonable person in [the adult victim's] position would think she was making a record of evidence for a future prosecution when she told [the para-

medic and the doctor] that her injuries occurred as a result of her boyfriend choking her and throwing her against the wall."); *State v. Moses,* 129 Wash.App. 718, 119 P.3d 906, 907–08, 912 (2005) (concluding, after noting that the doctor had no role in the investigation of the assault, that there was nothing in the record to indicate that the adult victim believed or had reason to believe that her statements to the doctor identifying her husband as her abuser would be used at a subsequent trial). *Compare People v. Sisavath,* 118 Cal.App.4th 1396, 13 Cal.Rptr.3d 753, 756, 757–58 (2004) (concluding that the statements made by a child victim in an interview conducted by a specially trained forensic interviewer were testimonial, where the interview took place after the preliminary hearing, and was conducted in the presence of the district attorney and investigator).

**24.** *Compare Snowden v. State,* 156 Md.App. 139, 846 A.2d 36, 47 (2004) (statements made by child victims to a child protective services social worker were made for purposes of criminal prosecution, and thus were testimonial).

"non-testimonial" (*i.e.*, admissible at trial even if the victim is not available to testify), while the victim's assertions concerning the identity of the perpetrator are deemed "testimonial" unless the government establishes that the identity of the perpetrator was information reasonably relied on by the physician as pertinent to the diagnosis or treatment of the victim.

See, for instance, *United States v. Cree*, 400 F.Supp.2d 1192, 1197 (D.N.D.2005), and *In re T.T.*, 351 Ill.App.3d 976, 287 Ill.Dec. 145, 815 N.E.2d 789, 803–05 (2004). The court in *In re T.T.* concluded that a seven-year-old victim's statement to a doctor identifying her assailant was testimonial, but that her statements describing the cause of her symptoms and pain, and the general character of the assault, were not testimonial. (We note that the decision in *In re T.T.* was later vacated by the Illinois Supreme Court: *In re T.T.*, 224 Ill.2d 575, 310 Ill.Dec. 572, 866 N.E.2d 1174 (2007).)

This approach may seem attractive at first glance, because it simplifies a judge's task. Under this approach, in most instances, the judge would simply ascertain whether the challenged evidence was admissible under the hearsay rules governing statements made for the purpose of medical diagnosis or treatment, and then the confrontation issue would be resolved too.

But *Crawford* and *Davis* are premised on the idea that a defendant's right of confrontation is distinct from the policies that underlie the hearsay rules. As the Supreme Court explained in *Crawford*,

> [T]he principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly [the] use of *ex parte* examinations [of witnesses] as evidence against the accused.... The Sixth Amendment must be interpreted with this focus in mind.
>
> . . .
>
> This focus ... suggests that not all hearsay implicates the Sixth Amendment's core concerns. An off-hand, overheard remark might be unreliable evidence[,] and thus a good candidate for exclusion under [the] hearsay rules, but [the admission of such evidence] bears little resemblance to

the civil-law abuses the Confrontation Clause targeted. On the other hand, [statements made during] *ex parte* examinations might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them.

*Crawford*, 541 U.S. at 50–51, 124 S.Ct. at 1363–64.

As the results in *Crawford* and *Davis* illustrate, hearsay evidence may violate a defendant's right of confrontation even though that evidence might be admissible under the hearsay rules. Thus, the fact that hearsay might be admissible under the medical diagnosis and treatment exception does not, *per se*, guarantee that the hearsay is "non-testimonial" for Sixth Amendment purposes. On the other hand, as the last-quoted excerpt from *Crawford* points out, the fact that hearsay would *not* be admissible under the hearsay rules does not, *per se*, mean that the admission of this testimony violates the Sixth Amendment.

In sum, there is no easy correlation between (1) admissibility of hearsay under the confrontation clause and (2) admissibility of hearsay under the exception for statements made for the purpose of medical diagnosis or treatment. In particular, given the Supreme Court's analysis in *Crawford* and *Davis*, a court can not simply adopt the rule that statements for medical purposes are "non-testimonial" if the declarant's assertions are confined to a description of the crime, and "testimonial" if the declarant makes an assertion about the identity of the perpetrator.

We believe that the California Supreme Court's decision in *People v. Cage*, 40 Cal.4th 965, 56 Cal.Rptr.3d 789, 155 P.3d 205 (2007), *cert. denied* ——— U.S. ———, 128 S.Ct. 612, 169 L.Ed.2d 395 (2007), more accurately describes the Sixth Amendment analysis that applies to Clark's case.

The defendant in *Cage* was accused of using a shard of glass to slash her teenage son's face. Following the attack, the victim was taken by ambulance to a hospital for

treatment.[25] While the victim was in the hospital waiting to be seen by emergency room doctors, he was interviewed by a police officer, and he described the attack to the officer.[26] A little later, the victim was evaluated by emergency room physicians and then he was taken to a surgeon specializing in head and neck injuries.[27] The surgeon asked him, "What happened?" In response to the surgeon's question, the victim again described how his mother had cut him with a piece of glass.[28]

The victim did not testify at Cage's trial.[29] However, through hearsay testimony, the government introduced the victim's statements to the police officer and the surgeon. The trial judge ruled before trial that this hearsay was admissible under California evidence law.[30]

Cage was convicted, and she appealed. While her appeal was pending, first *Crawford* and then *Davis* were decided.[31] Based on the United States Supreme Court's decision in *Davis,* the California Supreme Court concluded that (1) the victim's statements to the police officer constituted "testimonial" hearsay, and the introduction of these statements at Cage's trial violated her right of confrontation, but (2) the victim's similar statements to the surgeon were not "testimonial" hearsay, and thus the government could validly introduce that evidence against Cage even though the victim did not testify at Cage's trial.[32]

The California court declared that, under the principles announced in *Davis,* it was "manifest" that the victim's answers to the police officer's questions in the hospital waiting room were testimonial hearsay.[33]

The court pointed out that the officer had been dispatched to investigate the domestic disturbance, and he found the victim sitting on a curb with his face slashed. When emergency medical personnel transported the victim to the hospital, the officer did not accompany them. Instead, he came to the hospital later to interview the victim.[34] As the California court explained:

> [B]y the time [the officer] spoke with [the victim], the incident that caused [the victim's] injury had been over for more than an hour. The alleged assailant and the alleged victim were geographically separated, [and the victim] had been taken to a remote location to receive medical treatment.... [H]e was in no danger of further violence as to which contemporaneous police intervention might be required.
>
> ...
>
> [The officer's] clear purpose in coming to speak with [the victim] was not to deal with a *present emergency,* but to obtain a fresh account of *past events* ... as part of an inquiry into possible criminal activity.

*Cage,* 56 Cal.Rptr.3d 789, 155 P.3d at 217–18 (emphasis in the original).

But when the California court applied a *Davis* analysis to the statements that the victim gave to the surgeon, the court concluded that these statements were non-testimonial.[35] Here is how the court explained its decision:

> [When the victim's conversation with the surgeon took place, the victim] needed immediate acute treatment for a five- or six-inch laceration on the side of his face and neck. As [the surgeon] explained, his sole object in asking [the victim] "what happened" was to determine ... the exact nature of the wound, and thus the correct mode of treatment. The question was neutral in form, and though [the victim] responded by identifying [Cage] as his assailant, [the surgeon] did not pursue that

25. *Cage,* 56 Cal.Rptr.3d 789, 155 P.3d at 208.

26. *Id.*

27. *Id.*

28. *Id.*

29. *Id.* at 209.

30. *Id.* at 210.

31. *Id.* at 210 & 213–14.

32. *Id.* at 217, 222.

33. *Id.* at 217.

34. *Id.*

35. *Id.* at 222.

avenue further. Objectively viewed, the primary purpose of the [surgeon's] question, and the [victim's] answer, was not to establish or prove past facts for possible [prosecutorial] use, but [rather] to help [the surgeon] deal with the immediate medical situation[.] It was thus akin to the 911 operator's emergency questioning of [the victim] in *Davis*.

*Cage*, 56 Cal.Rptr.3d 789, 155 P.3d at 218.

The California court further noted that "there [was] no evidence that [the surgeon] was acting in conjunction with law enforcement, or that his question about the cause of [the victim's] injury had any evidence-gathering aim.... The question and answer occurred in a private conversation between a patient and his doctor, by which both [the patient and the doctor] presumably sought only to ensure [the patient's] proper treatment." [36]

*Application of these principles to Clark's case*

■ As explained above, the district court concluded (based on the testimony presented at the evidentiary hearing) that when Amouak was interviewed by the nurse and the doctor at the hospital emergency room, the primary purpose of the interview was to secure proper medical diagnosis and treatment of Amouak's injuries. The district court's conclusion is supported by the record.

Nurse Matlock testified that it was her responsibility to interview patients newly admitted to the emergency room to determine the extent of their injuries, the cause of their injuries, what level of care was needed, and how quickly the patient needed to see a doctor. Matlock performed this assessment of Amouak, including a physical exam, and she recorded her findings in a patient assessment report (which was admitted at Clark's trial). In her report, Matlock wrote: "Assaulted by boyfriend tonight, hit to face, abd[omen], legs, arms and eye. Has not called the police." Further down, under the category "DV Comment", Matlock wrote: "By boyfriend".

The emergency room physician, Doctor Leigh, did not recall the details of his interview with Amouak, but he confirmed what was written in his medical report: that Amouak told him she had been assaulted by her boyfriend, and that a friend found her in a snow bank. The doctor testified that he elicited this information for medical purposes.

In addition, as we have already explained, Amouak testified that she came to the emergency room because, during the assault, she heard something break in her face, and she was worried that her face would be deformed.

It is true that, even though the district court expressly found that the nurse's and doctor's primary purpose in interviewing Amouak was to ensure proper medical diagnosis and treatment, the district court made no express finding as to Amouak's primary purpose in speaking to the nurse and doctor. But Amouak's testimony—that she sought medical treatment because she feared that she might have a deforming injury—was the only testimony on this point. From the wording of the district court's decision, we conclude that the district court found Amouak's testimony credible. We believe that the district court would not have remained silent on this issue if the court had found that Amouak had some purpose other than to secure proper treatment for her injuries.

We acknowledge that, objectively speaking, a person in Amouak's position might reasonably anticipate that her statements to the emergency room personnel could become available to the government and might ultimately be used in a criminal prosecution. But this circumstance, standing alone, does not make Amouak's statements to the nurse and the doctor "testimonial"—for the same thing was true of the victim's statements to the 911 operator in *Davis*, and yet the Supreme Court held that those statements were non-testimonial.

■ One could argue that Clark's case is different from the facts of *Davis*, in that the assault committed on Amouak was concluded by the time she came to the emergency

---

**36.** *Id.* at 219.

room, while the victim in *Davis* was reporting ongoing criminal activity. But as the California Supreme Court explained in *Cage*, when the issue is the proper categorization of a patient's statements to a medical care provider, the case does not turn on whether there was an ongoing risk of further injury at the time of the patient's statements, but rather whether there was a current need for diagnosis and treatment.[37]

Clark suggests that, despite Amouak's unrefuted testimony to the contrary, Amouak's primary purpose in speaking to the emergency room personnel was not to secure medical help. Clark points out that, before Amouak arrived at the emergency room, she had ample time to contemplate her situation and to perceive that, if she told the full truth about her activities that evening, she could be in trouble with the law. Clark suggests that, because Amouak had this potential motive to misrepresent the events of that evening, the hearsay testimony concerning her statements to the doctor and the nurse should be deemed "testimonial" hearsay for purposes of *Crawford*. There are two answers to this contention.

First, as we have already explained, Clark's attorney made this argument to the district court, and we interpret the district court's decision as at least an implicit finding that Amouak's primary purpose was to obtain medical care.

█ Second, the Supreme Court's decision in *Davis* indicates that the decision as to whether hearsay is "testimonial" is not controlled by the subjective motives of the parties to the conversation. *Davis* implicitly (if not directly) holds that the issue of "primary purpose" is determined objectively, taking into consideration all of the circumstances that might reasonably bear on the intent of the participants to the conversation.[38]

When we take into consideration all of the pertinent circumstances here—the underlying events of the evening in question, plus the subsequent actions and statements of Amouak, the nurse, and the doctor—we conclude that these circumstances objectively establish that Amouak and the emergency room personnel shared the primary purpose of obtaining/providing proper medical care for Amouak.

*Conclusion*

For the reasons explained here, we conclude that the statements attributed to Amouak in the hospital records were not "testimonial" hearsay as defined in *Crawford* and *Davis*. Therefore, even though Amouak did not testify at Clark's trial, the government's introduction of this hearsay at trial did not violate Clark's right of confrontation under the Sixth Amendment.

The judgement of the district court is AFFIRMED.

COATS, Chief Judge, dissenting.

COATS, Chief Judge, dissenting.

Travis Clark was convicted of assaulting his girlfriend, Loretta Amouak. Amouak's statements to hospital staff that her injuries resulted from an assault by her boyfriend were a key part of the State's evidence against Clark.

According to Amouak's friend, Kimberly Yadon, Amouak borrowed Clark's truck without his permission on the night of the assault, after she had been drinking. Amouak drove the truck into a ditch, miring it in deep snow. Clark and Yadon picked Amouak up and drove her to the house she and Clark shared. Yadon could see that Clark was angry with Amouak, and she was concerned about leaving Amouak alone with him. But Amouak was also angry; after she called Yadon a "slut," Yadon left.

Several hours later, Amouak telephoned Yadon. Amouak was crying and hysterical,

---

37. *Cage,* 56 Cal.Rptr.3d 789, 155 P.3d at 216–17, 218–19.

38. *See Davis,* 547 U.S. at 826, 126 S.Ct. at 2276 ("The question before us ... is whether, objectively considered, the interrogation that took place in the course of the 911 call produced testimonial statements.") *and* 547 U.S. at 828, 126 S.Ct. at 2277 ("We conclude from all this that the circumstances of [the] interrogation objectively indicate [that] its primary purpose was to enable police assistance to meet an ongoing emergency.").

and she asked Yadon to pick her up at a store near Amouak's and Clark's residence. When Yadon arrived, she saw that Amouak had a black eye, a bruised face, and a swollen nose. Yadon drove Amouak to the hospital. Because Amouak had been drinking and driving without a valid license, Yadon and Amouak agreed not to tell anyone that Amouak had been driving that night. Yadon then called the state troopers to report the assault. According to Amouak's medical records, Amouak told hospital staff that her boyfriend had assaulted her and that a friend found her in a snowbank after the assault.

During trial, the court admitted, without objection, the medical records pertinent to this incident. Those records documented Amouak's injuries and her statements identifying her boyfriend as her assailant.

Following Yadon's testimony that Amouak had been drinking and driving with a revoked license, District Court Judge Gregory Heath appointed an attorney to advise Amouak that she risked incriminating herself if she testified. Following several days of negotiation, the State refused to grant Amouak immunity from prosecution, and Amouak asserted her Fifth Amendment right not to incriminate herself.

At this point, realizing that Amouak was not going to testify, Clark objected to Amouak's previously admitted statements in her medical records that her boyfriend had assaulted her. Clark objected that the statements were inadmissible hearsay and that their admission violated his Sixth Amendment right to confront the witnesses against him. Judge Heath ruled that Clark had waived these claims by not objecting when the State first offered the medical records.

On appeal, this court concluded that because Clark had not made a timely objection, he waived the right to exclude the statements on hearsay grounds. But we concluded that Clark's Confrontation Clause objection was not untimely because, at the time the court admitted Amouak's medical records, Clark reasonably believed Amouak would testify and that he would have the opportunity to cross-examine her on her statements. We therefore remanded the case and directed the trial court to determine if Clark's confrontation right had been violated.

On remand, following an evidentiary hearing, Judge Heath found that the information contained in the medical records was gathered "solely for purposes of emergency medical evaluation, diagnosis and treatment." Judge Heath concluded that Amouak's statements were not "testimonial" under *Crawford v. Washington*[1] and *Davis v. Washington*,[2] and that their admission did not violate the Confrontation Clause.

Under the Sixth Amendment, an accused in a criminal case has a right to confront the witnesses against him. In *Crawford,* the United States Supreme Court construed this right as prohibiting the government from introducing the "testimonial" statements of a witness who does not testify at trial unless (1) the government demonstrates that the witness is unavailable to testify and (2) the defendant had a previous opportunity to cross-examine the witness about the hearsay statements.[3] Non-testimonial statements do not implicate the Confrontation Clause and are admissible as long as they fall within a hearsay exception.[4]

I agree with the majority that the Supreme Court's decisions in the companion cases of *Davis* and *Hammon v. Indiana*[5] are the most pertinent cases in assessing whether the statements in Amouak's medical records identifying Clark as her assailant are testimonial under *Crawford.* But I do not think those cases provide a clear answer.

In *Davis,* Michelle McCottry called a 911 operator to report that she had just been assaulted by her former boyfriend, Davis,

1. 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

2. 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

3. 541 U.S. at 59, 124 S.Ct. at 1369.

4. *Davis,* 547 U.S. at 821, 126 S.Ct. at 2273; *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374.

5. *Davis,* 547 U.S. 813, 126 S.Ct. 2266. *Davis and Hammon* were consolidated in *Davis.* However, I refer to them separately for purposes of comparison.

who had fled the scene.[6] Over Davis's Confrontation Clause objection, the trial court admitted a recording of the 911 call at Davis's trial, and Davis was convicted.[7] The United States Supreme Court held that admission of the 911 tape had not violated Davis's right to confront the witnesses against him.[8] The Court noted that McCottry's statements were made to obtain police assistance in an ongoing emergency, not to recite to the police what had happened in the past.[9]

The Court contrasted the facts in *Davis* with the facts in *Hammon.* In *Hammon,* the police responded to a domestic disturbance.[10] Amy Hammon told the police that her husband, Herschel Hammon, had assaulted her.[11] Amy Hammon did not testify at trial, and the court admitted her statements to the police over Herschel Hammon's objection.[12] The Supreme Court reversed that decision, finding that Amy Hammon's statements were testimonial because they were obtained not to address an ongoing emergency, but rather to establish what had happened in the past for the primary purpose of investigating a possible crime.[13]

The *Davis* and *Hammon* cases provide a clear dividing line when a crime victim makes a statement to the police. If the statement describes an ongoing emergency that requires immediate police assistance, the statement is generally not testimonial. If the statement does not describe an ongoing emergency, it generally is testimonial. But *Davis* and *Hammon* do not provide clear guidance as to when admission of an out-of-court statement that is not made to the police violates the Confrontation Clause.

In the present case, Amouak's statements were made to hospital staff, not to the police. If the statements had been made to the police, they would be testimonial, because at the time they were made there was no emergency requiring immediate police assistance. The question is whether the statements are not testimonial because they were made to medical personnel in the course of Amouak obtaining medical treatment.

Amouak's out-of-court statements identifying Clark as her assailant would not normally be admissible over a hearsay objection. In *Johnson v. State,*[14] the Alaska Supreme Court held as a matter of law that a domestic violence victim's statements to her doctor identifying her assailant do not fall within the hearsay exception for statements made for purposes of medical diagnosis or treatment.[15] The supreme court explained that "statements fixing fault and indicating the identity of an assailant are not relevant to medical diagnosis or treatment" and therefore "lack assurances of reliability and should be excluded."[16]

Furthermore, under *Ohio v. Roberts,*[17] the governing law before *Crawford,* admission of Amouak's statements identifying Clark as her assailant would violate the Confrontation Clause. Under the *Ohio v. Roberts* test, statements of a hearsay declarant who is unavailable to testify at trial can be admitted only if the statements bear adequate "indicia of reliability."[18] Reliability can be inferred if the evidence "falls within a firmly rooted hearsay exception" or if there is a showing that the statements have "particularized

**6.** *Id.* at 817–18, 126 S.Ct. at 2270–71.

**7.** *Id.* at 819, 126 S.Ct. at 2271.

**8.** *Id.* at 827–29, 126 S.Ct. at 2276–77.

**9.** *Id.* at 827–28, 126 S.Ct. at 2276–77.

**10.** *Id.* at 819, 126 S.Ct. at 2272.

**11.** *Id.* at 820–21, 126 S.Ct. at 2272–73.

**12.** *Id.* at 820, 126 S.Ct. at 2272.

**13.** *Id.* at 829–30, 126 S.Ct. at 2278.

**14.** 579 P.2d 20 (Alaska 1978).

**15.** *Id.* at 22.

**16.** *Id.; see also Sluka v. State,* 717 P.2d 394, 398–99 (Alaska App.1986) (child's statement to her doctor that her father had hit her with a shoe was inadmissible to the extent it identified the father as the assailant).

**17.** 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

**18.** *Id.* at 66, 100 S.Ct. at 2539.

guarantees of trustworthiness." [19] As discussed above, Amouak's statements identifying Clark would not normally be admissible under a hearsay exception. And there is certainly no reason to find her statements reliable. We know from Kimberly Yadon's testimony that, because Amouak had been drinking and driving without a valid license, Amouak and Yadon agreed before they went to the hospital to lie about the fact that Amouak had been driving that night. So there was testimony to support an inference that Amouak was not truthful about the events of that evening.

It is not clear to me where the United States Supreme Court is going with its Confrontation Clause analysis. The Court overruled *Ohio v. Roberts*, which had been the law since 1980, but has only begun to develop the Confrontation Clause analysis it first announced in *Crawford*. Therefore, I find myself in the uncomfortable position of trying to predict where the Court's analysis will go. I do not think *Davis* and *Hammon* provide a definitive answer in this case. I do know that Amouak's out-of-court statements would not be admissible under the hearsay rules or under formerly well-established case law as set out in *Ohio v. Roberts*.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Loretta Amouak was an important witness against Clark. Yet Clark had no opportunity to confront Amouak at his trial. Fundamental fairness suggests that Clark should not have been convicted based on Amouak's out-of-court statements unless the jury had the opportunity to see Amouak testify, to see Clark cross-examine her, and to weigh Amouak's credibility on that basis. I therefore respectfully dissent.